683 A.2d 1166

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. J.T., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 25, 1995—Decided November 4, 1996.

Before Judges PRESSLER, STERN and HUMPHREYS.[1]

*Anthony P. Alfano* argued the cause for appellant (*Mr. Alfano*, on the brief and reply letter brief).

*Barbara Petersen,* Special Deputy Attorney General, Acting Assistant Bergen County Prosecutor, argued the cause for respondent (*Charles R. Buckley,* Deputy Attorney General—In Charge, Acting Bergen County Prosecutor, attorney; *Ms. Petersen,* of counsel and on the letter brief).

The opinion of the court was delivered by

STERN, J.A.D.

Defendant appeals from an adjudication finding him in contempt for violating a domestic violence restraining order, *N.J.S.A.* 2C:29–9(b) (count one), and guilty of harassment, *N.J.S.A.* 2C:33–4(c) (count two). Defendant was sentenced to thirty days in jail, with a credit for eight days already spent in custody, on the contempt violation, which constituted a disorderly persons offense. He was fined $100 on the harassment conviction, a petty disorderly persons offense. No issue of merger is raised.

The harassment complaint alleged that defendant engaged "in a course of alarming conduct in violation of 2C:33–4(c)." On this appeal defendant argues:

> POINT I The Decision of the Trial Court Should Be Reversed Because the Evidence Does Not Support a Finding that the Defendant–Appellant Violated The Final Restraining Order.

---

[1] Judge Humphreys did not participate in oral argument, but with the consent of the parties participated in the disposition of the appeal.

POINT II The Trial Court Erred in Finding That the Defendant–Appellant's Conduct Constituted Alarming or Harassing Conduct In Violation of the Final Restraining Order.

We disagree and affirm the convictions.

The Final Restraining Order under the Prevention of Domestic Violence Act was issued on September 9, 1991, and the event giving rise to this appeal occurred on June 18, 1992. The restraining order prohibited defendant "from having contact with the victim *including,* but not limited to ... entering plaintiff's residence, place of employment, business or school." (Emphasis added.) The order also prohibited him "from harassing plaintiff ... in any manner."

Mrs. T. testified that at around 8 a.m. on June 18, 1992 she "went to let the dogs out and [defendant] was on the ground staring at me ... sitting on the ground staring at the apartment, the townhouse." He "got up" when his wife went outside, but said nothing to her. Mrs. T. was "scared" because of "[p]rior problems" with defendant and, based on where defendant was, did not want to walk to her car.

Mrs. T. acknowledged that defendant was not on her property and that her property was about nine feet from the fence on the other side of which defendant was located. At approximately 10:40 a.m., police officers responded to Mrs. T.'s call for assistance. Officer William Pessler located defendant two or three feet on the other side of "the fence." Defendant told Pessler he was aware of the restraining order and "was doing nothing wrong." He subsequently told police in a formal statement at headquarters that he "did not violate any restraining order" and "was not on the marital property at any time."[2] He further stated he "did not ...

---

[2] When distances are estimated, as here, by measurements or comparisons to the courtroom, the judge should state the estimated distance for the record. The State's brief says that Mrs. T. "was startled by defendant, who was sitting on the lawn about twenty to twenty-five feet away...." The witness' reference to a diagram should also be preserved for the record. According to defendant's brief, he "was separated from [Mrs. T.] by her backyard, a fence, a large driveway that

speak to or harass anyone in anyway," had no "contact" with Mrs. T. "in anyway," did not damage any property, "did not commit any act of violence" and "had no intent to do any of the above."[3]

Defendant did not testify on his own behalf. The trial judge concluded that defendant violated the restraining order and was in contempt of court, stating:

> I find that the charges of harassment under the petty disorderly persons—a petty disorderly persons offense. And the charge of violating the court order, a disorderly persons offense. I find the defendant guilty of both of these because I find that the conduct that was described in the testimony constitutes harassment. I believe that if you take this statement of Mr. [T] in which he says, "I didn't violate any restraining order. I was not on the property. I didn't speak to or harass anybody. I didn't contact [Mrs. T]. I didn't damage any property. I didn't commit any acts of violence." I believe that implicit in this statement is that Mr. [T] wanted to see just how far he could go without violating this restraining order. ... Mr. [T] knew that he was to stay away and not in anyway bother her. And I find that his presence in—obviously from the circumstances I have to conclude that [ ] he was there for the purpose of being seen. He did not conceal himself. He wasn't lurking in the bushes peeking out from the foliage and Mrs. [T] had to strain to see him or he wasn't at a distance. He was at a distance of what I discern to be 20/25 feet away. And in plain sight. His announcing his presence to his wife, I have to conclude is there for the purpose of being annoying, alarming. It is a passive form of a threat. And it's announcing his presence that he's there just to bother her. So I find from all the testimony that a case for harassment has been made.

As we recently said in *State v. B.H.*, 290 *N.J.Super.* 588, 597, 676 *A.*2d 565 (App.Div.1996):

> [A] person is guilty of harassment, if, with the purpose to harass another, *E.K. v. G.K.*, 241 *N.J.Super.* 567, 575 *A.*2d 883 (App.Div.1990), he or she engages in an act prohibited by the statute. Standing alone, proof of a defendant's purpose to harass a victim is insufficient to sustain a conviction under *N.J.S.A.* 2C:33-4. The purpose to harass must be coupled with the performance of one of the acts proscribed by Sections (a), (b) or (c) of the statute in order to constitute harassment. *Cf. Grant*

---

serves the entire apartment complex, another fence and the additional distance between defendant-appellant and the fence."

[3] At the end of the State's case the judge excluded "any testimony" regarding statements made in response to questions asked by the officers when they arrived because, the judge reasoned, they knew of the restraining order and thought defendant's presence constituted a violation. The judge did not exclude the subsequent "Mirandarize[d]" formal statement taken at police headquarters.

*v. Wright*, 222 *N.J.Super.* 191, 196, 536 *A.*2d 319 (App.Div.), *certif. denied*, 111 *N.J.* 562, 546 *A.*2d 493 (1988) (interpreting Section (c) of the Act). These sections address categories of conduct which can be broadly described as communications, physical contact, and course of conduct.

... and Section (c) prohibits a course of alarming conduct or repeated acts done with purpose to alarm or seriously annoy another.

[*State v. B.H., supra,* 290 *N.J.Super.* at 597, 676 *A.*2d 565.]

Section (c), under which defendant was convicted, "forbids a course of alarming conduct or repeated acts committed with purpose to alarm or seriously annoy the victim. In short, the leitmotif which runs throughout the sections is a prohibition against conduct of some consequence." *Id.* at 598, 676 *A.*2d 565; *see also State v. L.C.,* 283 *N.J.Super.* 441, 449, 662 *A.*2d 577 (App.Div.1995), *certif. denied,* 143 *N.J.* 325, 670 *A.*2d 1066 (1996); *Peranio v. Peranio,* 280 *N.J.Super.* 47, 55–56, 654 *A.*2d 495 (App.Div.1995).

The trial judge referred to a prior violation of the restraining order, but there was no proof thereof introduced into evidence for purposes of proving defendant's purpose or his "course of conduct." Based on the testimony, the trial judge had to determine whether defendant, by situating himself as he did, engaged in a "course of alarming conduct" "with purpose to harass another." *See N.J.S.A.* 2C:33–4(c). Defendant's insistence that he did not violate the restraining order nor intended to do so is not controlling. Rather, it is a question for the fact-finder to decide based on defendant's conduct. Here, the trial judge found that defendant situated himself "for the purpose of being ... alarming," thereby engaging in a course of alarming conduct.

■ Our scope of review is limited. The only question before us is whether the record contains sufficient evidence to support the judge's conclusion. *State v. Johnson,* 42 *N.J.* 146, 161, 199 *A.*2d 809 (1964). Based on defendant's knowledge of his wife and the premises, it cannot be doubted that defendant positioned himself in a location where his wife could see him as she exited the house—whether to let the dog out, go to her car or otherwise. And he did so despite the injunction from "having contact" with

his wife and from "harassing [her] in any manner." That he was there with the purpose to harass her can be inferred, beyond a reasonable doubt, from the totality of circumstances. There is a difference between engaging in a "course of alarming conduct" and "repeatedly committ[ing] acts with purpose to alarm or seriously annoy" another, and the fact repeated acts were not involved does not mean defendant did not engage in a "course of alarming conduct."

Placing oneself in a location and remaining there for some time may constitute a "course of conduct." In addition, defendant "got up" and moved in such a way that his wife could see him as soon as she opened the door. "Conduct" may be "any positive or negative act" and "its accompanying state of mind," *Black's Law Dictionary* (5th ed.1979), and does not require any minimum amount of time, duration, or separate components. It can be the "chosen manner of conducting oneself" at a particular time or period. *Webster's Ninth New Collegiate Dictionary* (9th ed.1985).

The State points out that, incident to the final restraining order, defendant was to obtain counselling from the "Alternatives to Domestic Violence" program, that defendant was previously found guilty of violating the same restraining order on September 30, 1991,[4] and that at the sentencing therefor on April 20, 1992 defendant was reminded to stay away from his wife and that as a condition of the sentence he was "restricted from contact with the victim." The State contends that "a trial judge may rely on [such prior proceedings involving] proven facts and common sense to infer that a defendant intended to harass his victim."

■ We agree with the State that such prior conduct may be relevant to whether defendant had the necessary purpose. However, while proof "by a preponderance of the evidence" permits the issuance of a restraining order, *see N.J.S.A.* 2C:25–29(a), here defendant was being prosecuted for disorderly persons and petty

---

[4] Although not contained in the appendix before us, the State notes that defendant was also charged with and convicted of trespass at the same time.

disorderly persons offenses, *see N.J.S.A.* 2C:29–9(b), 2C:33–4, "offenses" under the Code of Criminal Justice, *see N.J.S.A.* 2C:1–4(b), 2C:1–14(k), 2C:43–8, for which the State has the burden of proof of "each element of such offense ... beyond a reasonable doubt." *N.J.S.A.* 2C:1–13(a); *see also, e.g., State v. Janiec,* 9 *N.J.Super.* 29, 32–33, 74 *A.*2d 605 (App.Div.1950), *aff'd,* 6 *N.J.* 608, 80 *A.*2d 94 (1951), *cert. denied,* 341 *U.S.* 955, 71 *S.Ct.* 1007, 95 *L. Ed.* 1376 (1951) (holding that judicial notice of prior conviction is not permissible to prove violation of Habitual Criminal Act). Further, the rules of evidence prescribe the manner of taking judicial notice of prior proceedings during trial, with each party having an "opportunity to be heard" on the subject, *N.J.R.E.* 201(e), and they do not include the judge's reliance on his own recollection of such proceedings. *See Evid. R.* 9–12 in effect at the time of trial; *N.J.R.E.* 201–202.

 In noting that a "purpose to harass" is an element of harassment, *N.J.S.A.* 2C:33–4, we need not pass upon the State's suggestion that the judge can take judicial notice of prior proceedings in order to sustain the convictions. Here, the record justifies the convictions based on the proofs introduced at the trial and the judge's findings thereon. Of course, the judge could properly consider the prior conviction and conduct for purposes of determining the sentence. *See, e.g., McMillan v. Pennsylvania,* 477 *U.S.* 79, 106 *S.Ct.* 2411, 91 *L.Ed.*2d 67 (1986); *State v. Stewart,* 96 *N.J.* 596, 606, 477 *A.*2d 300 (1984) (prior conviction not element of offense requiring proof beyond reasonable doubt for purposes of sentencing; "court is free to consider all relevant material, not merely that admissible at trial"); *N.J.S.A.* 2C:25–30.

Affirmed.