793 A.2d 780

H.E.S., PLAINTIFF–RESPONDENT, v. J.C.S., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 5, 2001—Decided March 21, 2002.

 
 

Before Judges KING, CUFF and WECKER.

*Clement F. Lisitski* argued the cause for appellant.

*Michele C. Verno* argued the cause for respondent (*Ackerman Alsofrom & Verno* attorneys; *Ms. Verno*, on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

This domestic violence case requires us to address questions of procedural due process as well as the required elements of harassment and stalking as predicate acts under the Prevention of Domestic Violence Act, *N.J.S.A.* 2C:25–17 to –35 ("the Act").

Defendant J.C.S. (hereinafter "J" or defendant), the husband of plaintiff H.E.S. (hereinafter "H" or plaintiff), appeals from a final restraining order entered pursuant to the Act. The order was entered after the trial judge found that defendant had committed acts against plaintiff constituting harassment, proscribed by *N.J.S.A.* 2C:33–4, and stalking, proscribed by *N.J.S.A.* 2C:12–10. Each of those offenses is a predicate offense under the Act. *N.J.S.A.* 2C:25–19a(13) and (14).

Defendant presents the following arguments on appeal:

POINT I

THE TRIAL COURT VIOLATED [J'S] DUE PROCESS RIGHTS BY FINDING THAT HE COMMITTED AN ACT OF DOMESTIC VIOLENCE NOT EVEN ALLEGED IN THE COMPLAINT.

POINT II

THE TRIAL COURT VIOLATED [J'S] DUE PROCESS RIGHTS BY FAILING TO SUPPLY HIM WITH SUFFICIENT NOTICE OF THE FINAL RESTRAINING ORDER HEARING.

A. [J] DID NOT HAVE TIME TO PREPARE A REASONABLE DEFENSE BECAUSE HE WAS NOT GIVEN SUFFICIENT NOTICE OF THE CHARGES AGAINST HIM.

B. THE COURT TOOK AWAY [J'S] RIGHT TO SUBPOENA WITNESSES BY FORCING HIM TO PROCEED TO TRIAL.

POINT III

PLACEMENT OF A CAMERA AND MICROPHONE IN THE WALL OF THE COUPLE'S HOME DOES NOT CONSTITUTE DOMESTIC VIOLENCE.

POINT IV

THE COURT'S FACTUAL FINDING WAS NOT BASED ON SUFFICIENT CREDIBLE EVIDENCE IN THE RECORD SINCE THERE WAS NO EVI-

DENCE THAT [J] PLACED THE CAMERA IN HIS WIFE'S BEDROOM OR USED IT TO TAPE HER.

We conclude that the facts supported by the evidence and found by the trial judge do not satisfy the elements of harassment as a matter of law; however, we agree with the trial judge that the proofs support the elements of stalking, and that under all the circumstances, defendant's due process rights were not infringed.

Defendant moved into a separate bedroom in November 1999, while plaintiff continued to occupy the marital bedroom. In June 2000, plaintiff filed a divorce complaint against defendant. However, the parties continued to share the marital home, along with their two young daughters, after the complaint was filed.

On August 21, 2000, J (the defendant in this case) filed a domestic violence complaint (FV–01–000321–01–C) against H (the plaintiff in this case), alleging that on August 17, 2000, H conspired with her brothers to break windows in J's two vehicles, thereby committing acts of terroristic threats and criminal mischief under the Act. A temporary restraining order was entered against H, with a final hearing scheduled for August 31.

On August 22, H filed this domestic violence complaint against J (FV–01–000331–01–C). The typed complaint that was served upon J specified the following acts committed by him:

ON 8–18–00 PLA[INTIFF] CAME HOME FROM CHURCH WITH THE CHILDREN. PLA[INTIFF] COULDN'T GET INTO HER GARAGE BECAUSE DEF[ENDANT] LOCKED SAME. DEF[ENDANT] BEGAN TO YELL AND SCREAM ABOUT HOW HE WAS GOING TO DESTROY PLA[INTIFF] & HER FAMILY. AND THE ONLY WAY PLA[INTIFF] WOULD GET OUT OF THIS MARRIAGE IS BY DEATH.

Plaintiff's August 22, 2000, complaint was filed on a pre-printed form designed for domestic violence complaints. The form provided five lines, each line approximately five inches long, on which to place this information. In the section for checking which of the predicate criminal offenses plaintiff alleged, there is a typed "X" next to "terroristic threats." Neither "harassment" nor "stalking" is checked.

In answer to the form question, "Any prior history of domestic violence?" there appears a typed "X" next to the printed answer "yes," but the only additional information in the three lines following the instruction "explain and dates," is the last line of the above-quoted answer about the August 18 incident and the cross-reference "SEE FV 01–321–01C" (J's August 21 complaint against H).

Plaintiff's complaint and temporary restraining order, which set a final hearing for August 24, was served on defendant on August 23. Defendant's attorney's request for a continuance was denied, and a combined hearing on both complaints began on August 24.[1] J testified on his complaint. H testified in defense of J's complaint as well as on her own complaint. J did not take the stand to rebut H's testimony. At the conclusion of the hearing, the trial judge dismissed defendant's complaint for insufficient evidence. Defendant has not appealed that dismissal.

Plaintiff testified about the August 18 incident set forth in her complaint. Before she left for church with her children, defendant threatened to "destroy" plaintiff if she did not drop her divorce complaint. When she returned home after church, at about 11:15 p.m., defendant met them at the front door and said, "girls, you can come in. [H], it's over. You're doomed. I will destroy you. The only way you're going to get out of this marriage is by death." Plaintiff proceeded to go into the house, and defendant began to "rant and rave." When plaintiff's counsel asked if defendant had ever acted that way before, defense counsel objected that the complaint failed to list any prior incidents. The Judge ruled that "what may be in that form may be an issue for cross-examination and credibility, but it doesn't preclude in any way testimony regarding past incidences [sic] which are admissible in the Court."

---

[1] As noted above, the original return date on J's complaint in FV–01–000321–01–C was August 31. The record does not reveal why H's later filed complaint was scheduled to be heard on August 24. Defendant did not object to proceeding on his own complaint on August 24.

Plaintiff proceeded to describe several incidents that occurred on various dates, one as far back as 1991, in which defendant displayed his "violent temper." He once refused to let her use one of his cars to get to work, telling her to "find your own way to get to work." Another time, when she did take his car to work, he came and took the car, leaving her stranded. About a year before the hearing, plaintiff confronted defendant when she found pictures of women, with names, addresses, and phone numbers, that defendant had printed from the Internet. Defendant chased her and physically pinned her down in an attempt to take the papers from her. He inflicted bruises on her, causing her to call the police, but she did not press charges. Plaintiff testified that once, defendant "hit me so hard until he knocked me out."

Plaintiff went on to testify that on August 19, 2000, she was in her bedroom when she noticed "a little square that had been carved out of the picture [hanging on the wall], cardboard, and I looked a little closer." She found a "micro chip" that proved to be a miniature camera with a microphone. She called the police, who came and took photos showing the device and wiring leading from it to the attic, then to defendant's office, and finally to defendant's bedroom, where the wiring was connected to a VCR. Plaintiff removed the camera.

Upon finding the equipment, which amounted to a hidden surveillance system, plaintiff understood how defendant seemed to know details about her daily activities that he could not otherwise have known. Plaintiff was "devastated" by her discovery, which gave her "more reason" to get out of the home. She explained that defendant had "made several statements to me about he understands why husbands kill their wives because it's women like me that make men kill their wives...." She was "terrified of him." Since November 1999, when defendant moved out of plaintiff's bedroom, plaintiff testified that he had tried to force himself on her sexually "several times".

Defense counsel objected that the camera incident was unrelated to the domestic violence complaint, but the judge allowed the

questioning to continue. On cross-examination defense counsel asked plaintiff about her failure to specify any prior incidents on the complaint. Plaintiff responded that she did include some incidents on another form:

A. Farther down—Yes. Farther down when I had written out the complaint, they get my handwritten one, there's several other incidents besides that—that one. If you can pull the record, it will show that other incidents were written out. That's what they typed up.

Apparently plaintiff was referring to a "Victim Information Sheet" that she filled out as part of the domestic violence unit's intake procedure, but that was not served upon defendant.[2] In the section of that form labeled "PRIOR INCIDENTS," plaintiff hand-printed the following:

Sept 1999 had to call police because he hit me—lock me in a room. June 20 had to call police again because he stole my money & check while I was in church. I came home and he said I'd better drop Divorce Proceeding or if it the last thing he will destoy [sic] me. August 19, 2000 had to call police again because I found my room bug [sic] by microphone & camera. Various and number of other occasions of intimidations, harrasments, [sic] and threats to my life.

Defense counsel objected to having to proceed when he had seen that document for the first time on the same morning, the 24th of August. Plaintiff's response was that P1 was "available to him."

Defense counsel again objected on "due process grounds" to any evidence about prior incidents, about which the complaint, which he had received only the previous day, said nothing. The judge ruled that "[t]he complaint does not in and of itself exclude [sic] what evidence will be admissible. It does not in any way preclude testimony of past acts of domestic violence." Defense counsel protested:

I know it's a summary matter, but if I had two or three days even. I didn't—have an opportunity—now the witness says she—she put a lot more on her on her

---

2 The form is marked "THIS IS A CONFIDENTIAL COURT DOCUMENT." Plaintiff has annexed that sheet to her brief as "P1;" however, there is no indication that P1 actually was introduced into evidence, and its inclusion in an appendix is improper without an order allowing plaintiff to supplement the record.

particular written complaint that she wrote out which I don't even have a copy of because this matter was scheduled for 8:30 this morning and my client got it yesterday. I was in trial all day and brought [sic] it to me last night. Now where is due process there? It does affect us because now I'm going to have to have my client get on the stand about something that I know nothing about without even talking to him about the matter at all and getting the facts and having to defend this and that's very unfair.

The judge reaffirmed his ruling but allowed defense counsel to consult with defendant: "If after consulting with your client, you find additional time or evidence or witnesses are needed you can then again renew your motion." In fact, the hearing did not resume until the next day, when defense counsel again asked for a continuance, representing that he had hired a private investigator, who obtained "the [police] records" and attempted to contact the police officers involved in some of the prior incidents. Counsel claimed to need more time so that he could subpoena those officers, arguing that he was "in a very precarious position" because he had not had time to prepare his defense of the camera incident, of which he was not aware until August 24.

The only other proffer by defendant was the police report of plaintiff's August 19 discovery, which corroborates the location of the surveillance equipment as described by plaintiff, but also includes the following:

[H] advised she wanted to disconnect the camera and microphone and find out who put them there. When questioned if she thought it was [J], she stated she felt it was him but stated she did not want to confront him or do anything. Patrol advised that if she felt she was being harassed by [J], she had the right to sign a complaint for Harassment. [H] advised that this is something that [J] would do, that she has covered up for him in the past but did not want to do anything about it. Patrol advised [H] that if she thinks it was [J] or if she was harassed in any why [sic] or felt her domestic rights were violated in any way, she could attempt to get a restraining order. [H] advised she did not want to do that because she does not know if [J] placed the cameras and microphone in the wall.

The judge denied a continuance and excluded on hearsay grounds most of the investigator's testimony regarding police reports.

With respect to plaintiff's complaint, the judge found that plaintiff had not proved her allegation of terroristic threats based upon the August 18 incident set forth in her August 22 complaint; however, he concluded that she had proved, by a preponderance of

the evidence, that defendant was guilty of "stalking" and "harassment" by secreting a camera and microphone in plaintiff's bedroom. On that basis, the judge entered a final restraining order against defendant, barring him from the marital home and prohibiting him from contacting, harassing, or stalking plaintiff.

## I.

We first address J's due process argument. There is no doubt that evidence of the parties' previous history can be considered in a final hearing on a domestic violence complaint. Indeed, "[t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse," are among the factors the court is required to consider. *N.J.S.A.* 2C:25–29a(1); *Cesare v. Cesare*, 154 *N.J.* 394, 402, 713 *A.2d* 390 (1998); *Corrente v. Corrente*, 281 *N.J.Super.* 243, 248, 657 *A.2d* 440 (App.Div.1995). Such evidence is often essential to provide background and context for the acts charged in the complaint itself; to permit an inference to be drawn respecting the purposeful state of mind of the defendant; and to allow the trial judge to weigh the seriousness of the risk of future acts of violence and craft appropriate terms of any restraining order.

We have not previously addressed the extent to which a defendant in a domestic violence proceeding is entitled to advance notice of each such prior act to be offered in evidence. We decline to hold that the specific allegations of prior acts must be set forth in the complaint when offered for such purposes. We deem it sufficient that a trial judge has discretion to grant an adjournment to gather exculpatory evidence where a sufficient proffer is made. We see no reason to treat subsequent history any differently, where offered for similar purposes.

However, there is a difference between allowing evidence of prior or subsequent acts for one of the above-stated purposes and relying on acts not set forth in the complaint to establish the predicate act of domestic violence. Basic principles of fairness require notice of the charge one is required to defend and an

opportunity to be heard on that charge. *See J.F. v. B.K.*, 308 *N.J.Super.* 387, 391–92, 706 *A.*2d 203 (App.Div.1998) (due process is violated when a judge "convert[s] a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint."). Although domestic violence is a civil offense under the Act, violation of a restraining order under the Act is a crime punishable by a prison sentence. *N.J.S.A.* 2C:25–30. Such a serious consequence demands that due process be observed in every domestic violence proceeding. *See L.D. v. W.D.*, 327 *N.J.Super.* 1, 4, 742 *A.*2d 588 (App.Div.1999) ("[I]t is clearly improper to base a finding of domestic violence upon acts or a course of conduct not even mentioned in the complaint.") [3]

In the context of domestic violence proceedings, we must balance a defendant's right to notice with protection of the plaintiff and the practical realities of the judicial system. The Legislature has deemed the threat of domestic violence to be so serious that a prompt, *ex parte* temporary restraining order is available, subject to a final hearing scheduled no more than ten days thereafter. Thus, the time frame within which any defendant must prepare to defend a charge of domestic violence normally is limited.[4] Of course, the ten-day provision does not preclude a continuance

---

[3] In *L.D. v. W.D.*, after noting the principle set forth in *J.F.*, we decided the case on its merits, finding the conduct alleged insufficient as a matter of law to establish a "purpose to harass" or to cause "annoyance or alarm." 327 *N.J.Super.* at 5, 742 *A.*2d 588.

[4] The Domestic Violence Procedures Manual issued under the authority of the Supreme Court of New Jersey and the Attorney General of the State of New Jersey (revised November 1998) ("Procedures Manual") appears to allow for a final hearing as early as one day after service of a Domestic Violence complaint upon the defendant. *Id.* at 42–43, 742 *A.*2d 588:

> A final hearing must be scheduled within 10 days of the filing of the complaint.... If return of service has not been received by the day before a final hearing a designated clerical person should check with the agency responsible for service (sheriff or local police) to ascertain verbally whether or not defendant was successfully served.
> [Footnote omitted.]

where fundamental fairness dictates allowing a defendant additional time to produce evidence or otherwise prepare, so long as any temporary restraints remain in place. *Cf. Depos v. Depos,* 307 *N.J.Super.* 396, 704 *A.*2d 1049 (Ch.Div.1997), where the trial judge denied the defendant's request for an adjournment to depose the plaintiff, reasoning that

> due process can be secured by granting to the defendant the right to request a continuance of the trial in order to prepare a defense if and when matters are testified to which go beyond what plaintiff has alleged in the complaint. This right can be exercised by defendant either at the end of plaintiff's direct testimony in order to prepare for effective cross-examination or at the end of plaintiff's case, whichever is determined appropriate by defendant.
>
> [*Id.* at 402, 704 *A.*2d 1049.]

In the case before us, defendant learned for the first time on August 24 that plaintiff was accusing him of conducting the hidden surveillance. As it turned out, despite the judge's denial of defendant's request for an adjournment, he did have overnight to prepare his defense. Significantly, defendant did not take the stand in response to plaintiff's case to deny that the surveillance equipment was placed in plaintiff's bedroom or that he was responsible for putting it there.

The basic principle set forth by Judge Skillman in *J.F. v. B.K.* is beyond dispute:

> It constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint. Defendant could not prepare a defense to charges that he was not even told about until the day of the hearing. We also note that the trial court interrupted defendant when he indicated that he had witnesses to present with respect to the charge alleged in the complaint.
>
> [308 *N.J.Super.* at 391–92, 706 *A.*2d 203 (citations omitted).]

However, we find *J.F. v. B.K.* distinguishable on the facts. The defendant in *J.F.* was cut off by the trial judge when he attempted to proffer a response to the complaint and a final restraining order was immediately issued. While defendant here also had same-day notice of plaintiff's new allegation as a result of discovering the surveillance equipment, defendant did have overnight to consider his response. Further, unlike the defendant in *J.F. v. B.K.,*

defendant here was represented by counsel; he retained an investigator; and the only proffers he made were the police report of the August 19 discovery and the representation that if given more time, he would subpoena the police officers who responded to plaintiff's prior calls. Defendant offered no information as to what he expected those officers to say that would be exculpatory. Moreover, we see no indication that the trial judge actually relied upon any prior incidents in finding that the surveillance constituted stalking. Thus we find no prejudice in the unavailability of such witnesses.

We assume defendant sought to introduce the August 19 report to show that plaintiff initially expressed uncertainty about whether J had installed the equipment. That statement, if admitted, permits an inference that plaintiff did not know who physically installed the equipment; it does not suggest that she was unsure whether her husband was responsible.

What is key is that in this civil proceeding, defendant himself unquestionably had the opportunity to deny his involvement with the surveillance equipment and did not do so. Nor did his attorney suggest that short notice had any bearing on defendant's decision not to testify in response to plaintiff's case against him. Although it may have been preferable for the judge to allow a brief continuance, we cannot say that it was an abuse of discretion to proceed in the absence of any proffer that further investigation would yield evidence tending to establish that someone other than defendant was responsible.

Another distinguishing circumstance in this case is that plaintiff plainly provided intake personnel with a statement of the August 19 discovery of the surveillance equipment wired from her bedroom to defendant's quarters. The failure to include that act on the part of court personnel who prepared the typed complaint on August 22 (and there is no suggestion that it was plaintiff who did so), or to attach the Information Sheet to the complaint that was served upon defendant, should not inure to plaintiff's detriment any more than to defendant's. Finally, in *J.F. v. B.K.*, there was

an alternative ground for the decision; the predicate acts found by the trial judge all had been the subject of a previously dismissed domestic violence complaint, and *res judicata* therefore barred further proceedings arising out of those acts.

We suggest that the Conference of Family Division Presiding Judges consider two remedial steps in the domestic violence intake procedure to minimize issues of notice in future cases. First, the complaint form itself should be revised to leave additional space for the allegations of each predicate act of domestic violence as well as descriptions of each prior act to be offered in evidence pursuant to *N.J.S.A.* 2C:25–29a(1). Whatever the space allowed, there also should be a written instruction on the form to "use an additional sheet if necessary." Second, intake personnel who assist complainants in filling out intake papers and who prepare the actual complaint must be instructed with regard to the importance of including on the complaint itself each incident charged.[5] What is critical, consistent with *J.F. v. B.K.*, is that a defendant receive notice of the conduct alleged to constitute a predicate offense. The complaint served upon defendant in this case did not provide such notice; nevertheless, we are satisfied that defendant did have actual notice and the opportunity to defend against plaintiff's allegations arising from her August 19 discovery.[6] By allowing trial on those allegations to proceed, the judge effectively

---

[5] According to the Procedures Manual,

> A victim who chooses to sign a domestic violence complaint should be given a Victim Information Sheet to complete .. and should be assisted in completing that Victim Information Sheet whenever necessary.
> [Footnote omitted.]
> *Using the information sheet, a professional staff person who has been selected and trained to perform domestic violence intake functions should assist the victim in filling out a complaint,* including a request for all those types of available emergent and long-term relief sought by the victim.
> [Footnote omitted and emphasis added.]

[6] We deem it substantially less significant whether the statutory predicate offense checked off on the form complaint was the offense actually established by the conduct charged.

allowed plaintiff to amend her complaint. In the alternative, the judge could have required plaintiff to file a new complaint, which then could have been served upon defendant while all the parties were in court on his complaint. We see no error in the procedure the judge adopted.

## II.

Defendant argues that the final restraining order must be reversed because there was insufficient proof that he was the person who installed the monitoring equipment and because the camera incident, as a matter of law, cannot meet the statutory elements either of harassment or stalking. We first address the evidence of defendant's responsibility for the equipment.

## A.

The only testimony on this incident came from plaintiff, who discovered the "micro chip" camera and microphone embedded in a picture on her bedroom wall. Police photos taken the day of the discovery showed wires running from the camera through the attic and defendant's office, ending in defendant's bedroom, where they were connected to a VCR. Plaintiff concluded that this explained how defendant seemed to know "my every move, my every step." For example, he knew whom she had talked to on the phone and where she had traveled while on her job. Plaintiff also testified that defendant had secretly recorded her in their bedroom "years ago."

Defendant offered the testimony of his private detective, who testified that the police report of the camera incident did not indicate "who installed the device." The judge ruled that testimony inadmissible as hearsay. As noted above, we have considered that report as defendant's proffer, and conclude that it does not have any reasonable potential for rebutting the strong circumstantial evidence of defendant's responsibility for installing the equipment.

The trial judge concluded that defendant was the one who installed the equipment. He reasoned as follows:

First of all, it's clear to me that [J] was the one who put the camera in there. There's no plausible reason, no other explanation why anybody other than [J] would do that. He had moved out of the bedroom earlier. The wires were in a picture. The wires went up into the ceiling and over into his office where all the equipment for recording and listening were set.[7] It just goes beyond the comprehension of this Court that somebody would somehow break in their house, go into [J's] office, run these wires and put it in their bedroom and be aware of the fact that the two weren't sleeping in the bedroom at the same time.

Defendant contends that neither plaintiff nor anyone else testified to seeing defendant install the equipment, and that plaintiff's observation that defendant seemed to know her every move did not prove that he was the culprit. While there was no direct evidence that defendant himself actually installed the equipment, the circumstantial evidence was compelling that he made use of it. The wiring led to viewing equipment in defendant's bedroom, no one else had easy access to plaintiff's bedroom, and defendant offered no exculpatory explanation either for the presence of the equipment or his awareness of plaintiff's activities. Moreover, whether defendant himself installed the surveillance camera or had someone else do it, the overwhelming evidence supports his responsibility for its installation and his culpability for its use. The trial judge's finding was amply supported by credible evidence and warrants our deference. *See Pascale v. Pascale,* 113 *N.J.* 20, 33, 549 *A.*2d 782 (1988); *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,* 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974).

## B.

■ Defendant argues that even if he was responsible for the surveillance system, his conduct was neither harassment nor stalking as defined by the Criminal Code. We agree that the

---

[7] It is not entirely clear from the record whether defendant's office and bedroom were separate rooms or one room. But it is clear that the wiring, the controls, and the viewing capability all were located in a room occupied by defendant.

proofs do not satisfy all of the elements of harassment; we disagree as to stalking.

A person is guilty of the petty disorderly persons offense of harassment

if, with purpose to harass another, he:

a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

A communication under subsection a. may be deemed to have been made either at the place where it originated or at the place where it was received.

[*N.J.S.A.* 2C:33–4.]

In *State v. Hoffman,* 149 *N.J.* 564, 695 *A.*2d 236 (1997), the Court reversed a finding that defendant's conduct constituted harassment proscribed by *N.J.S.A.* 2C:33–4a. The Court explained that:

A violation of subsection (a) requires the following elements: (1) defendant made or caused to be made a communication; (2) defendant's purpose in making or causing the communication to be made was to harass another person; and (3) the communication was in one of the specified manners or any other manner similarly likely to cause annoyance or alarm to its intended recipient.

[*Id.* at 576, 695 *A.*2d 236.]

Speaking for the Court, Justice Coleman emphasized that the "proper focus in a subsection (a) prosecution should be on whether the method or manner of communication established an harassing intent to annoy or alarm." *Id.* at 575, 695 *A.*2d 236. While we address a subsection (c) and not a subsection (a) offense in this appeal, the common element of each form of harassment is the "purpose to harass." *See State v. J.T.,* 294 *N.J.Super.* 540, 543–44, 683 *A.*2d 1166 (App.Div.1996).

In finding defendant guilty of harassment defined by subsection (c), the judge reasoned:

Obviously, having a recording device or a listening device where another does not consent is an act which is designed to alarm or annoy. This is an act that certainly under our constitution cannot be performed by the State except under very, very strict circumstances which we all know is protected by the Constitution and

subsequent case law. For an individual to do that I find does constitute an act of harassment.

As defendant contends, the necessary elements of a subsection (c) offense are lacking here. Indeed, he reasons, "whoever installed the camera could not have wanted to annoy or alarm [H]—one of the goals would have been to avoid detection. The camera was hidden so [she] would not know it was there." We agree that the evidence does not support a finding that the perpetrator had either the purpose to harass or to alarm or seriously annoy plaintiff. Harassment requires proof of both those elements.

The same logic led us to hold *N.J.S.A.* 2C:33–4c inapplicable to a "peeping Tom." In *State v. Fuchs,* 230 *N.J.Super.* 420, 426–27, 553 *A.*2d 853 (App.Div.1989), we found insufficient proof of the required "purpose to harass" where there was no proof that the victims of a peeping Tom ever saw defendant looking in their window, or that defendant made any effort to bother the victims. We held it insufficient in that case that the defendant knew that his conduct would alarm or annoy anyone who might see him; rather, there also had to be proof that he had the "conscious object" to cause such alarm or annoyance. *Id.* at 428, 553 *A.*2d 853 (citing the Code definition of purposeful conduct, *N.J.S.A.* 2C:2–2b(1)). In *Fuchs,* we cited with approval *State v. Zarin,* 220 *N.J.Super.* 99, 531 *A.*2d 411 (Law Div.1987), where Judge McKenzie concluded under similar circumstances:

> It would seem that almost by definition a "peeping Tom" has no purpose to harass those he wishes to observe. He does not want to alarm or annoy them; to the contrary, his purpose is to observe his "victims" and in so doing to remain undetected. Such was the case here. The individual was detected inadvertently, and, after he was detected, made no effort to annoy or alarm the individuals in the apartment. He simply fled when he was discovered and challenged. There is no evidence that the defendant was guilty of harassment within the language and meaning of the statute.
>
> [*Zarin,* 220 *N.J.Super.* at 101–02, 531 *A.*2d 411.]

The elements of stalking are different from the elements of harassment. A person is guilty of stalking "if he purposefully or knowingly engages in a course of conduct directed at a specific person that *would cause a reasonable person to fear bodily injury*

to himself or a member of his immediate family or to fear the death of himself or a member of his immediate family." *N.J.S.A.* 2C:12–10b (emphasis added). The judge concluded that defendant's installation of the camera and microphone

> falls within the stalking statute because it's repetitive activity. Obviously, this was there for a period of time. We don't know how long, but it was more than once, more than one day, perhaps weeks, perhaps months. And that kicks in the provision of the stalking statute prohibiting repetitive conduct which is designed to put an individual in fear or threat of harm. I think it's reasonable that anybody would be very fearful if they thought their every move was being watched and/or, worse yet, recorded.

While the judge obviously misspoke in referring to a "design[ ] to put an individual in fear," that mistake does not affect his accurate conclusion that the conduct here would reasonably make anyone "very fearful if they thought their every move was being watched and/or . . . recorded."

The phrase "course of conduct" means "repeatedly maintaining a visual or physical proximity to a person or repeatedly conveying . . . verbal or written threats or threats . . . implied by conduct or a combination thereof directed at or toward a person." *N.J.S.A.* 2C:12–10a(1). "Repeatedly" means on "two or more occasions." *N.J.S.A.* 2C:12–10a(2). The evidence supports the inference that the hidden camera was used secretly to monitor plaintiff's conduct and conversations over a sufficient period or on a sufficient number of occasions to establish a "course of conduct" under the statute. The camera was discovered on August 19, the day after the incident upon which the complaint was based. Nonetheless, there is a strong inference that the camera had been installed well before August 19, given plaintiff's testimony that defendant had seemed to know plaintiff's every move for some time before August 19.

Significantly, the stalking statute includes an objective and not a subjective test of the effect of a perpetrator's purposeful conduct: that a "reasonable person" would "fear bodily injury." Thus unlike harassment, which requires proof that the perpetrator intended to provoke a certain reaction in his victim—serious annoyance or alarm—stalking is purposeful conduct that would

cause fear in a reasonable person, irrespective of whether the perpetrator intended to instill such fear. Here plaintiff also described her actual fear in reaction to finding the camera:

> I couldn't believe it. I was devastated. I said it—that's more reason why I have to get out. My husband has made several statements to me about he understands why husbands kill their wives because it's women like me that make men kill their wives and I said I can't—

We find such a reaction objectively reasonable under the circumstances.

■ We are also convinced that in order to determine that a defendant is guilty of stalking, it is irrelevant whether the target is aware of the conduct as it occurs or whether it is discovered after the fact. By way of example, if *A* is unaware as he parks his car in his driveway each night that *B* has been following and watching him, but learns of *B's* conduct from a neighbor who has observed *B* following *A* on repeated occasions, the subsequent discovery could reasonably cause *A* to fear injury at the hands of *B* and could establish a stalking offense. We are satisfied that discovering a hidden camera and microphone in one's bedroom, from which private conduct can be viewed and private conversations overheard, would put a reasonable person in plaintiff's position in fear of bodily injury.

While harassment was not established by the evidence, the predicate offense of stalking was. Thus the trial judge properly entered the final restraining order based upon that predicate offense.

Affirmed.