# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1161-23

M.J.M.,[1]

    Plaintiff-Respondent,

v.

M.E.P.,

    Defendant-Appellant.

_____

Submitted March 4, 2025 – Decided April 25, 2025

Before Judges Gilson and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FV-16-2677-23.

Lento Law Group, PC, attorneys for appellant (Samuel D. Jackson and Lawrence A. Katz, on the brief).

The Morgan Law Firm, LLC, attorney for respondent (Alexandra Morgan, of counsel and on the brief).

PER CURIAM

---

[1] We use initials and fictitious names to protect the confidentiality of the record and the privacy interest. <u>See</u> <u>R.</u> 1:38-3(d)(12).

Defendant M.E.P. appeals from an October 31, 2023 final restraining order (FRO) entered against her in favor of her former boyfriend, plaintiff M.J.M., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on the predicate acts of harassment, N.J.S.A. 2C:33-4, cyber-harassment, N.J.S.A. 2C:33-4.1, and contempt of a domestic violence restraining order, N.J.S.A. 2C:29-9. For the reasons that follow, we affirm the FRO.

I.

The parties were in a dating relationship for approximately six years that ended in June 2021. In July 2022, plaintiff obtained a temporary restraining order (TRO) against defendant, alleging terroristic threats, criminal trespass, and harassment. Shortly thereafter, plaintiff voluntarily withdrew the TRO.

On June 6, 2023, plaintiff obtained a second TRO against defendant, alleging terroristic threats, N.J.S.A. 2C:12-3, and harassment. The case was scheduled for a hearing on June 14, 2023. However, on that date, because defendant had not been served with the TRO, the court entered an indefinite TRO subject to the matter being rescheduled for an FRO hearing once defendant was served with the TRO. Shortly thereafter, defendant retained an attorney to

2

represent her on the matter, and counsel filed a notice of appearance on June 16, 2023.

The matter was rescheduled for an FRO hearing on October 24, 2023. Plaintiff, his attorney, and defense counsel appeared; defendant did not appear. Defense counsel represented that defendant was "made aware of the existence of a restraining order." Defense counsel stated that he had been retained to represent defendant on the domestic violence complaint and to accept service of the TRO on defendant's behalf.

Defense counsel advised the court that defendant was unable to be present for trial on that day, and requested a brief, one week adjournment. According to defense counsel, defendant was unable to appear because of her "mental health related to grieving the loss of an uncle . . . ." Defense counsel requested the matter be rescheduled for October 31, 2023. Counsel represented that defendant "knows that [it] will likely not be adjourned after Halloween." Accepting counsel's representations, the court granted the adjournment request, noting that the court had "no information" to confirm the relative's death or defendant's treatment for mental health issues.

The following week, when the matter was rescheduled for the FRO hearing, defendant again failed to appear. However, defendant sent to the court

3

"a multi-page typed written single spaced, margins pushed out to the corners, double sided letter." The court did not read the letter but provided it to defense counsel.

Defense counsel advised the court that moments before the hearing began, defendant contacted him but he was unable to confirm whether defendant intended to appear for the hearing. Defense counsel advised the court that he had told defendant "via email and text messages" that she needed to be present for the hearing. Satisfied that defendant received notice of the FRO hearing, the court stated that it would proceed with the hearing and permit defense counsel to participate in the trial in a limited manner by making arguments and cross examining the witnesses but not offering affirmative evidence because defendant was in default.

Plaintiff testified during the hearing and offered several exhibits, consisting of text and Facebook messages plaintiff identified as having been sent to him by defendant. Following their break-up in June 2021, plaintiff explained that the parties had very limited communication and he had not seen defendant since their relationship ended.

Despite their relationship having ended, plaintiff stated that defendant persisted in sending him "hundreds if not thousands of text messages" and

4

making "hundreds" of phone calls to him. Plaintiff explained defendant would not stop contacting him. In these messages, defendant threatened his and his girlfriend's lives and threatened to come to his home and to his job. According to plaintiff, defendant "has stated that she's out to ruin my life."

Plaintiff testified that on June 3, 2023,[2] defendant called and texted plaintiff non-stop from fake numbers. Plaintiff described repeatedly blocking numbers and defendant calling from a new number. Plaintiff received at least seventy-four text messages from defendant on June 3rd, "bashing me, calling me all kinds of names, seeing who I am currently dating." Plaintiff identified one of the text messages he received on June 3rd from defendant telling him "[y]ou're going to pay." Plaintiff further explained that during the parties' relationship, they had a child together who was stillborn. According to plaintiff, defendant is "fixated" on this issue, blaming plaintiff for the child's stillbirth.

Two days later, on June 6, 2023, defendant obtained a TRO. After obtaining the TRO, plaintiff continued to receive communications from defendant. For example, plaintiff identified a derogatory communication he received from defendant on June 13th, which included a picture of plaintiff and

---

[2] Plaintiff's testimony was supported by the text messages in the record. In the TRO, however, the date of the predicate acts is June 4, 2023.

his current girlfriend. During this time, defendant created fake Facebook profiles as well to communicate with plaintiff.

Plaintiff identified these various fake Facebook profiles of individuals whom he did not know but believed defendant created to communicate with him. Plaintiff explained that he was able to identify the profiles as having been created by defendant based on the "language style" used, the references to people plaintiff knew, and the similarity of the repeated threats. Plaintiff identified a Facebook profile for an individual by the name of Marie Martin, with the profile picture of defendant attached. The message dated June 13th, which was attached to this fake profile, stated:

> Oopsy in the shredder, so oops can't go anywhere, lol, lol.
>
> Is paper not going -- not going, it's worthless paper, lol. I put it in the shredder.

Plaintiff believed this message referred to the TRO with which plaintiff had been served.

Plaintiff also identified a message dated July 12th from a number he did not recognize, but which he believed was referring to plaintiff's present girlfriend. Plaintiff explained that the message conveyed defendant's belief that his present girlfriend was pregnant, and defendant wanted her to "bleed out." In another message, defendant identified pictures of himself, and his current

6

A-1161-23

girlfriend attached to the profile, as well as a message threatening to attend "the wedding and the birth." The message further threatened, "[y]ou will never escape. I will always watch you." Plaintiff feared for his safety based on such messages and described the threatening communications as "escalating."

Defense counsel objected throughout the trial and cross-examined plaintiff. Counsel also gave a closing argument urging the court to deny the relief sought.

After considering plaintiff's testimony and evidence, and making a credibility determination, the trial court entered an FRO, finding defendant committed the predicate acts of harassment, cyber-harassment, and contempt of a domestic violence restraining order. The court also found an FRO was necessary for plaintiff's protection given the "intensity of the communication."

The court found plaintiff testified directly and without embellishing his testimony. Consistent with the Supreme Court's holding in State v. Burkert, 231 N.J. 257 (2017), the trial court found defendant's repeated, threatening, and unwanted communications with defendant violated his right to be left alone. The court recognized that the predicate act of cyber-harassment was not identified on the face of the TRO; nonetheless, the court concluded this predicate act was implicated by the testimony. Thus, the court found that both cyber-harassment

and harassment had been proven. Additionally, the court found defendant persisted in communicating with defendant notwithstanding the issuance of the TRO, which satisfied the predicate act of contempt. However, the TRO had not been amended to include the predicate act of contempt. The court did not address the predicate act of terroristic threats that was included in the TRO.

In this appeal, defendant asserts two arguments: (1) the trial court's denial of an adjournment of the FRO hearing deprived defendant of due process; and (2) defense counsel's failure to seek an adjournment of the FRO hearing, knowing that defendant suffered severe mental illness, which prevented her from attending the hearing, constituted ineffective assistance of counsel in violation of defendant's Sixth Amendment right.

II.

Our review of an FRO issued after a bench trial is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); see also Gnall v. Gnall, 222 N.J. 414, 428 (2015). We do not defer to a trial court's findings if they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests

of justice." Cesare, 154 N.J. at 412; see also C.C., 463 N.J. Super. at 428. We review the trial court's legal conclusions, however, de novo. C.C., 463 N.J. Super. at 429.

The PDVA, specifically N.J.S.A. 2C:25-29(a), requires that a hearing be held "within 10 days of the filing of a [domestic violence] complaint . . . ." "[O]rdinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing." J.D. v. M.D.F., 207 N.J. 458, 478 (2011); see N.J.S.A. 2C:25-29(a). At a minimum, due process in the context of a domestic violence case requires that a party "receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" Ibid. (quoting H.E.S. v. J.C.S., 175 N.J. 309, 321 (2003)). Moreover, our Supreme Court has "held that due process forbids the trial court 'to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint.'" Ibid. (quoting H.E.S., 175 N.J. at 322).

The expedited, ten-day scheduling provision "does not preclude a continuance where fundamental fairness dictates allowing a defendant additional time." H.E.S., 175 N.J. at 323 (quoting H.E.S. v. J.C.S., 349 N.J. Super. 332, 342-43 (App. Div. 2002)). "Trial courts are granted considerable

9

latitude in scheduling their proceedings," and a reviewing court will generally not disturb those decisions "unless it represents a misapplication of discretion." State in Interest of Z.S., 464 N.J. Super. 507, 547 (App. Div. 2020). A request for an adjournment rests in the sound discretion of the trial court, who, in the context of a domestic violence case, must balance both the interests of both parties to a speedy but fair resolution. Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 575 (2003) (recognizing a "request for an adjournment is addressed to the trial judge's discretion"). Thus, we review a denial of an adjournment request under the abuse of discretion standard. Smith v. Smith, 17 N.J. Super. 128, 131-32 (App. Div. 1951).

In the present case, defendant retained counsel several months in advance of the FRO hearing, and on June 16, 2023, counsel filed a notice of appearance. At the hearing on October 24, 2023, counsel advised the court that the parties, through their attorneys, had engaged in settlement discussions in anticipation of the scheduled hearing. Furthermore, counsel requested, and the court granted, a one-week adjournment even though plaintiff was ready to proceed. The court confirmed the new FRO hearing date of October 31, 2023, which counsel communicated to his client. Moreover, counsel advised the court that defendant

was aware of the unlikelihood of any further adjournments after this date and of the court's intention to proceed in her absence should she fail to appear.

On October 31, 2023, defendant reached out to her attorney that morning, who attempted to clarify whether defendant planned to attend the hearing. Defendant provided no medical documentation supporting her assertion that she was unable to attend the hearing due to her mental health issues. The hearing commenced in the morning of October 31, 2023, and continued after the lunch recess. At no time did defendant appear.

Satisfied that defendant had notice of the hearing, had retained counsel, and had ample opportunity to prepare and to participate, the court proceeded with the FRO hearing. We discern no abuse of discretion in that decision.

Defendant next argues that she is entitled to a new trial because her attorney was ineffective by failing to request an adjournment of the FRO hearing, knowing that her mental illness prevented her from appearing and participating in the hearing. We reject plaintiff's ineffective assistance of counsel argument in this context.

Ineffective assistance of counsel is not cognizable as a basis for relief in a case brought pursuant to the PDVA. A domestic violence complaint brought under the PDVA is civil in nature. M.S. v. Millburn Police Dept., 197 N.J. 236,

248 (2008); see also J.D., 207 N.J. at 474. It is intended to remediate behavior and protect victims—not to punish wrongdoing. D.N. v. K.M., 429 N.J. Super. 592, 605 (App. Div. 2013). While we recognize the significant consequences that may result to an individual against whom an FRO may issue, "the protections of due process do not require the appointment of counsel" for an indigent defendant in a "civil domestic violence action." Id. at 606. Because defendant has no constitutional right under the Sixth Amendment to effective counsel in a domestic violence case, there is no viable claim warranting reversal on these grounds.

Moreover, we point out that given our affirmance of the trial court's decision to proceed with the FRO hearing, defendant could not establish any prejudice. Prejudice is a necessary element of a claim of ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 692 (1984).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1161-23