230 N.J. Super. 420 (1989)
553 A.2d 853
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
AIZYK JACOB FUCHS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 17, 1989.
Decided February 1, 1989.
*422 Before Judges PETRELLA and LANDAU.
Jeffrey Resnikoff, for appellant.
John Kaye, Monmouth County Prosecutor, for respondent (Mark P. Stalford, Assistant Prosecutor, of counsel and on the brief).
PER CURIAM
Defendant Aizyk Jacob Fuchs appeals from a judgment of conviction entered in the Superior Court, Law Division, of harassment, after a trial de novo on the record below from his conviction in the Ocean Township Municipal Court. Fuchs was sentenced to 30 days in jail; costs of $25 and a $30 penalty. This was the same sentence as imposed in the municipal court. The stay pending appeal was continued.
The events that led to the filing of the municipal court complaint for harassment[1] occurred at about 1:40 a.m. on February 11, 1988 at an apartment complex in Ocean Township. A police officer who was a tenant in an upstairs apartment heard a car approaching the complex, stop and then back up. The officer looked out his bedroom window and saw a red sports car with its engine running next to his parked car on the *423 street. The sports car then pulled up and parked on the right side of the street.
The officer observed the driver of that vehicle get out of the car and walk across the court yard next to the building directly underneath his second floor bedroom window to a first floor apartment window.
The officer testified that this man, who he identified at the municipal court trial as Fuchs, peered into the first floor window for about two to three minutes. The officer then heard a snap and saw Fuchs look around and run back to his car. The officer testified that he could see Fuchs clearly from his bedroom window and could identify the clothing he was wearing because Fuchs had parked under a street light.
Consequently, the officer called the Ocean Township Police Department and gave them a description of Fuchs and his sports car. Although he had temporarily lost sight of Fuchs while on the telephone with the Ocean Township police the officer saw Fuchs get into his car and drive south into the back of the apartment complex.
Two Ocean Township patrol cars arrived on the scene. The police officer in the first car had already stopped Fuchs' car by the time the second car arrived. In response to questioning by one of the officers about what he was doing at the apartment complex, Fuchs explained that he had been to a bar in Asbury Park and was on his way home when he stopped into the complex "to go to the bathroom."
An Ocean Township officer then interviewed the eyewitness, who pointed out the apartment window through which Fuchs had peered. Both officers then went to the window and looked through it from the outside. They were able to see at that time despite a fabric covering the window a woman wearing white clothing combing her hair. The officers went into the apartment and spoke to the woman and her husband. They observed that because of the fabric covering the window into which *424 Fuchs had peered, the woman could not have seen Fuchs from inside the apartment.[2]
At the municipal court trial Fuchs testified that he had pulled into the apartment complex to go to the bathroom. He said that he got out of the car, went to the bathroom, got back into his car and proceeded to head home. He denied ever having looked through the apartment window. Fuchs also stated that he lived in Ocean Township at the Continental Apartments, and acknowledged that his apartment was closer to Asbury Park than the apartment complex where he had stopped. He contended, however, that he chose this particular complex as a place to go to the bathroom because he had the urge to do so and did not enter the complex to peer into windows.
The municipal court judge found that Fuchs' actions constituted harassment under N.J.S.A. 2C:33-4(c), since his actions were designed to bother, annoy and scare other persons. The municipal judge concluded that the purpose of Fuchs' conduct was, in his opinion, to harass the woman by looking into her apartment window. Although the woman was apparently not alarmed and had not seen Fuchs' "peeping Tom" action, the judge found that it was not a requirement for a harassment conviction that the victim be alarmed as long as the actor's activities are designed to cause alarm, annoy or bother.[3] After *425 the trial de novo the Law Division judge issued a letter opinion in which he sustained Fuchs' harassment conviction.[4] The judge concluded:
Whatever other purpose this defendant may have had, his actions were designed in a way that if the victim had seen him peering in her window at 1:30 in the morning, she would have been frightened. So, even though a "peeping Tom's" main purpose is to look into a window and more than likely remain undetected, the ultimate design of his actions are for the harassment, annoyance or alarm of the victim. The defendant's intent, under the facts and circumstances of this case, is manifested by defendant's intrusive presence outside the window.
On this appeal defendant argued that (1) a "peeping Tom" is not guilty of any offense under the present Penal Code; (2) his action of allegedly peering into the window was not done for the purpose of harassing; (3) the elements of harassment, as defined in State v. Berka, 211 N.J. Super. 717 (Law Div. 1986) have not been proved; and (4) the Legislature is aware that there is no statute presently applicable to a "peeping Tom."
We are constrained to reverse based on the failure of the proofs to establish an essential fact under the statute, as well as the inapplicability of the harassment statute (N.J.S.A. 2C:33-4(c)) to the circumstances of this case. That statute reads:
A person commits a petty disorderly persons offense if, with purpose to harass another, he:
a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
b. Subjects another to striking, kicking, shoving or other offensive touching, or threatens to do so; or
c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
Although essentially the briefs deal with the issues of applicability and violation of the harassment statute, it is quite apparent that the proofs failed to establish that any person was *426 in the room when Fuchs was seen looking into the window, even crediting the State's testimony. We recognize that it might be argued that a reasonable inference would be that someone was probably in the room, but this is a criminal case in which the State has the obligation to prove all of the elements beyond a reasonable doubt. State v. Christener, 71 N.J. 55, 65 (1976); State v. Mayberry, 52 N.J. 413, 436-437 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969). The presence of a person at the scene or, as here, in the room as an object of harassment is a necessary element which must be proven by direct evidence in order to establish a violation of the harassment statute.[5] See State v. Aiello, 91 N.J. Super. 457, 463 (App.Div. 1966), cert. den. 388 U.S. 913, 87 S.Ct. 2106, 18 L.Ed.2d 1351 (1967). That a person was observed peering into a room, even in the middle of the night, does not by itself prove that element.
Aside from the factual deficiency of the State's case under the circumstances presented here, an analysis of N.J.S.A. 2C:33-4(c) satisfies us that Fuchs' conduct did not violate this statute. Since there was no annoying communication involved, the case was presented below on the basis of a violation of section c. That section makes it a petty disorderly persons offense if a person engages in a course of alarming conduct "with the purpose to alarm or seriously annoy" the victim. Despite the fact that it is undisputed that there was no proof that the victim ever saw Fuchs peering through her bedroom window, both courts below found that Fuchs' conduct constituted harassment.
Fuchs relies on the factually similar case of State v. Zarin, 220 N.J. Super. 99 (Law Div. 1987), to support his argument that he was improperly convicted of harassment since no requisite *427 "purpose to harass" had been proven. The defendant in the Zarin case had peered into the apartment of a tenant while the occupants were watching television. Upon noticing a shadow at the window the occupants pulled up the curtain and saw Zarin peering at them through the window. When Zarin was thus confronted he ran away. He was subsequently charged with and found guilty of violating N.J.S.A. 2C:33-4(c) in the municipal court. On the trial de novo in the Law Division a judgment of acquittal was entered based on the following reasoning:
It would seem that almost by definition a "peeping Tom" has no purpose to harass those he wished to observe. He does not want to alarm or annoy them; to the contrary, his purpose is to observe his "victims" and in so doing to remain undetected. [220 N.J. Super. at 101].
No evidence of harassment was found in Zarin within the language and meaning of the statute since defendant there had fled from the scene upon being detected inadvertently, and without having made an attempt to annoy or alarm the residents of the apartment.
Although it might be argued that the defendant in Zarin should have been considered to have annoyed or alarmed the residents since they had observed him and effectively scared him off, in the instant case there was no proof that the woman or her husband, the occupants of the apartment, ever saw Fuchs looking into the window. Fuchs had been detected inadvertently by the upstairs tenant. There is nothing in the record to show that Fuchs made any effort to bother the occupants of the apartment or any other occupant in the apartment complex. Further, there is no evidence that Fuchs' actions demonstrate "a purpose to harass."
Indeed, the State acknowledges that the woman later observed by the officer was not alarmed by Fuchs' conduct. Nevertheless, it maintains that a purpose to harass is evidenced by the fact that Fuchs knew that his behavior would cause the victim annoyance or alarm. However, aside from the fact that there was no testimony from the occupants of the downstairs *428 apartment, Fuchs allegedly observed, the State's argument incorrectly equates the term "purpose" with "knowledge." N.J.S.A. 2C:2-2b(1) defines "purposely" for purposes of the Penal Code as:
A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. (Emphasis added)
"Knowingly," on the other hand, is defined in subsection (2) of N.J.S.A. 2C:2-2b as follows:
A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. (Emphasis added)
While Fuchs' conduct might have made him aware that someone would have been alarmed or annoyed by his actions, it cannot be said on the record in this case that Fuchs demonstrated a "conscious" objective to do so. Therefore, the record does not support the requisite "purpose to harass" to sustain a conviction.
In light of our conclusions, we need not address Fuchs' further argument that at most the conduct of which he was accused would have been classified as an attempted harassment, and since harassment is a petty disorderly offense there can be no such offense as an attempted harassment. See N.J.S.A. 2C:5-1(a); State v. Clarke, 198 N.J. Super. 219, 225 (App.Div. 1985); II Final Report of the New Jersey Criminal Law Division Commission: Commentary 113-114 (1971).
Fuchs also relies on his argument that the Legislature is aware that being a "peeping Tom" is no longer cognizable as an offense in this State since the September 1, 1979 effective date of the Penal Code. Prior to the adoption of the Penal Code our criminal law contained a disorderly persons offense in N.J.S.A. 2A:170-31.1 which applied to so-called "peeping Toms." That statute, which was repealed[6] by the Code, read:

*429 Any person who trespasses on private property and surreptitiously or sneakingly invades the privacy of another by peering into the windows or other openings of dwelling places located thereon for no lawful purpose shall be adjudged a disorderly person.
This repealed statute was superseded by the criminal trespass provisions in N.J.S.A. 2C:18-3 of the Penal Code. See Commentary, New Jersey Criminal Law Revision Commission Report. The criminal trespass statute reads:
A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or surreptitiously remains in any structure, or separately secured or occupied portion thereof.
The commentary to the harassment statute (N.J.S.A. 2C:33-4) does not refer to the prior "peeping Tom" statute. Hence, the enactment of the Penal Code created a gap between the prior legislation and the Penal Code provisions. Our Supreme Court has indicated that where provisions of the pre-Code criminal law are repealed and not reincorporated into the new Code, a legislative intent to decriminalize that conduct is evident. State v. Crawley, 90 N.J. 241, 247 (1982); State v. Zarin, supra (220 N.J. Super. at 102).
The Legislature is required to clearly define the prohibitive conduct in order to give adequate notice and to provide a uniform standard of guilt. State v. Lee, 96 N.J. 156 (1984); State v. Norflett, 67 N.J. 268 (1975); State v. Monteleone, 36 N.J. 93 (1961). In addition to not being embraced within the parameters of the harassment statute (N.J.S.A. 2C:33-4), Fuchs' conduct also did not implicate the provisions of the criminal trespass statute (and he was not charged with a violation of that statute).
Defendant points out that A-2989 is presently pending in the Legislature and that this bill, if enacted, would reestablish a "peeping Tom" offense.[7] Although the mere pendency of proposed *430 legislation or inaction by the Legislature is not necessarily determinative of intent, Garden State Farms, Inc. v. Bay, 77 N.J. 439, 453 (1978); White v. North Bergen Twp., 77 N.J. 538, 555 (1978); 2A Sutherland, Statutory Construction, § 49.10 (4th Ed. 1984), the legislative history involving the repeal of the prior "peeping Tom" statute and the adoption of the harassment statute warrant the conclusion that unless and until the Legislature acts to make the act of surreptitiously peering into dwellings an offense, conduct such as that of defendant herein does not fall within the sanctions of the Penal Code.
The judgment of conviction is reversed.
NOTES
[1] Fuchs was originally charged in the municipal court criminal complaint with violating N.J.S.A. 2C:33-4(a). He was actually tried and convicted of a violation of subsection c of that statute.
[2] The alleged victim did not testify at the trial. Hence it is unknown whether she saw Fuchs peering into her window or whether she was in fact in the room at the time or for any of the time Fuchs was looking into the window. Based on the arguments in the municipal court the prosecution and the defense apparently agreed that the woman never saw Fuchs and as a result was not alarmed by him.
[3] At sentencing the municipal judge noted that the proceeding before him was approximately the fifth time Fuchs had been charged with harassment in Ocean Township Municipal Court. On the prior occasions Fuchs either had pled guilty or was found guilty of harassment. The judge noted that previous jail sentences and court imposed psychiatric counseling had apparently not benefited Fuchs, who the judge stated had previously been given "break after break, after break."
[4] Our rules require more than an appellate review of a municipal court conviction on a trial de novo. The judge is required to make independent findings and, if appropriate, enter a finding of guilty or not guilty and impose sentence. R. 3:23-8.
[5] This is far from condoning Fuchs' actions which certainly do not constitute acceptable conduct. However, in light of the legislative gap it simply does not constitute a criminal offense.
[6] N.J.S.A. 2C:1-5(a).
[7] Assembly Bill number 2989 of 1988, would supplement Title 2C as follows:

Any person who enters private property and surreptitiously or sneakingly peers into a window or other opening of a dwelling or other place adapted for overnight accommodation for the purpose of invading the privacy of another person is guilty of a disorderly persons offense.