266 N.J. Super. 716 (1993)
630 A.2d 430
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN E. LONG, DEFENDANT.
Superior Court of New Jersey, Law Division Passaic County.
Decided June 3, 1993.
*717 Mark Ranges, Assistant Prosecutor for State of New Jersey (Ronald S. Fava, Passaic County Prosecutor, attorney), for State of New Jersey.
*718 Joel J. Reinfeld, for defendant.
DeLUCCIA, J.S.C.
This appeal from a conviction in the Hawthorne Municipal Court addresses the issue of how far is "too far" in the efforts of a judgment-creditor to collect a civil judgment. Defendant, John E. Long, and complainant Ciarlo, enjoyed a brief economic relationship which was terminated for undisclosed reasons approximately two years prior to the Municipal Court trial. Although the transcripts of the Municipal Court proceedings are less than a model of clarity, it appears that Ciarlo defaulted on a contractual obligation to pay rent and damaged the leasehold premises prior to her departure. The tenancy lasted approximately six months. In an effort to redress his grievances, defendant retained the services of an attorney and commenced a civil action against Ciarlo in the Superior Court, Special Civil Part, Bergen County. Ciarlo defaulted and defendant obtained a judgment against her for approximately $4,000. representing back rent and physical damages to the apartment.
After the judgment was entered, defendant's attorney proceeded in accordance with R. 6:7-2 and obtained an order for discovery. The defendant, apparently concerned about the mounting costs of pursuing the elusive Ciarlo, decided to personally serve the Order. Defendant was advised by his attorney that while he could lawfully effect personal service of the order upon Ciarlo, he should nonetheless be "careful". On April 24, 1992, defendant appeared at Ciarlo's residence armed with the order for discovery. Ciarlo testified that defendant knocked at her door, stated "trick or treat," handed her the order and then "ran behind the bushes at [her] house." Except for this brief exchange, defendant neither spoke to complainant nor approached her in any threatening manner after service of the order.
The transcript reveals that Ciarlo proved to be an artful dodger. According to defendant's former attorney, notwithstanding the personal service of the order for discovery upon her, Ciarlo failed *719 to appear at the discovery proceedings. Defendant's attorney testified that he obtained a warrant for her arrest, which subsequently led to her appearance before the Special Civil Part where her depositions in aid of discovery were taken. Apparently the deposition was unproductive in revealing assets.
At this point, the defendant was introduced to the reality all too familiar to many civil litigants; that there is a difference between obtaining a money judgment and obtaining money in satisfaction of that judgment. Defendant's attorney advised him that "now you have to discover assets and levy against them in order to get that judgment." Defendant's attorney thereupon returned the file to the defendant. Thus began this odyssey which ended in the conviction of the defendant in the Hawthorne Municipal Court on a charge of harassment, N.J.S.A. 2C:33-4(c).
Unwilling or unable to spend additional monies for legal representation, yet equally unwilling to write off his judgment as a "bad debt", defendant set out on a mission to discover Ciarlo's assets. According to the competent testimony admitted by the Municipal Court, the defendant parked his car in front of the plaintiff's house on six occasions prior to the September 25, 1992 incident which is the subject of this appeal. Although there was no specific testimony from the complainant about these occasions, apparently defendant's stops outside her residence were brief. Ciarlo testified that on September 25, 1992 she left work shortly after her arrival, returning to her residence to retrieve some medication. She telephoned her boyfriend, Kerry Howard, and requested that he drive her back to work. Subsequently she heard Howard's truck, looked out her window and observed defendant in his vehicle "in a position where he had been sitting other times." Defendant quickly departed after the arrival of complainant's boyfriend. According to Howard's testimony, there were no conversations between defendant and Howard on this or any other occasion when the two encountered each other. Defendant would always drive away.
*720 Ciarlo was permitted to offer a considerable amount of incompetent testimony by way of hearsay. It is noted that at the Municipal Court trial, defendant was unrepresented but Ciarlo was provided with a municipal public defender, who both prosecuted her complaint against defendant and defended her on defendant's counter-complaint for harassment. Ciarlo's hearsay testimony included allegations of defendant's telephone contact with her current landlord and former employer. She further claimed, without any apparent basis or corroboration, that defendant's actions caused her to be fired. The Municipal Court belatedly sustained an objection to this testimony. However, defendant did admit to placing one telephone call to Ciarlo's landlord, inquiring about ownership of vehicles in his driveway.
Ciarlo also testified about a prior harassment complaint brought by her against defendant in the Ridgewood Municipal Court. The genesis of this complaint was defendant's attempt to write down complainant's license plate number while her car was parked in the municipal court parking lot. Although the transcript is unclear, it appears Ciarlo was at the Ridgewood Court, responding to defendant's complaint alleging theft and damages to the apartment. The Ridgewood Municipal Court declined to adjudicate either matter, referring them to an alternate dispute resolution committee. See R. 7:3-2.
Defendant testified at the trial that at all times he was merely endeavoring to ascertain the location of assets in order to satisfy his civil judgment against Ciarlo. He did not deny that he had parked in front of defendant's residence on at least six occasions, but maintained that they were of brief duration. He testified that such conduct was only for the purpose of determining whether Ciarlo owned any motor vehicles. Defendant testified, without contradiction, that except for the "trick or treat" exchange, he and Ciarlo had not spoken since she abandoned the apartment. Defendant also admitted that on one occasion, while passing Ciarlo's residence, he observed Howard and they exchanged "glares".
*721 At the conclusion of the testimony, the Municipal Court found defendant guilty of harassment. The court stated that while it did not believe that defendant was a "physical threat to her" it was nonetheless satisfied that defendant was intimidating Ciarlo in an attempt to collect his judgment. The court concluded that defendant was a "psychological threat" to Ciarlo. The Municipal Court found that the defendant was "over zealous" in his pursuit of collection efforts. The judge stated: "If you are passing her house frequently, parking in front of her house, taking her license number down, obviously doing things that you know will upset her, that's harassment." (emphasis added) The court then proceeded to restate its understanding of the law on debt collection and offered the defendant the following advice: "Now if you want to collect your judgment, fine. Get a lawyer. I recommend that extremely. Offer the lawyer half the judgment to collect it. If that's what need be done. Do whatever you have to do. But do not pursue this matter any further by yourself." From that judgment of conviction, the defendant appeals.
This appeal is before the court pursuant to R. 3:23-8(a). Accordingly the trial of the appeal is heard de novo on the record. As stated by our Supreme Court, the Law Division's "... function is to determine the case completely anew on the record made in the Municipal Court giving due, though not necessarily controlling, regard to the opportunity of the magistrate to judge the credibility of the witnesses." See State v. Johnson, 42 N.J. 146, 157, 199 A.2d 809 (1964). See also State v. Ross, 189 N.J. Super. 67, 75, 458 A.2d 1299 (App.Div. 1983).
Although the transcript of the proceedings below does not contain any explicit credibility assessments of any of the witnesses who testified, it is not necessary to decide the issues raised herein on the basis of credibility. Accepting as credible the competent testimony offered by the complainant Ciarlo, the issue to be resolved is whether the defendant's conduct transgressed the boundaries established by the Legislature in N.J.S.A. 2C:33-4(c).
*722 The specific section of the harassment statute which the defendant stands accused of violating provides, in pertinent part, "... a person commits a petty disorderly offense if, with purpose to harass another, he ... (c) engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." See N.J.S.A. 2C:33-4(c). Therefore, in order for the defendant to be convicted under this section, he must engage in purposeful conduct, which conduct is designed to harass the victim and which conduct is either alarming, or repeatedly committed and purposely produces a reasonably founded alarm or serious annoyance on the part of the victim. See State v. Berka, 211 N.J. Super. 717, 720, 512 A.2d 592 (Law Div. 1986).
The Municipal Court found the defendant guilty based in part, upon its perception that defendant had engaged in a course of conduct which he knew would upset the complainant. It appears the Municipal Court incorrectly equated the term "knowledge" with the term "purpose". The critical distinction between these two terms with respect to proofs in a harassment case is set forth in State v. Fuchs, 230 N.J. Super. 420, 428, 553 A.2d 853 (App.Div. 1989). See also N.J.S.A. 2C:2-2b and N.J.S.A. 2C:2-2b(1).
In Fuchs, supra, the defendant was acquitted of violating N.J.S.A. 2C:2-4(c). Defendant was arrested after he was observed peering into a window at an apartment complex where a woman and her husband resided. The alleged victim was found not to have been alarmed by this conduct inasmuch as she had not even observed defendant. In reversing the conviction, the Appellate Division noted the absence of evidence adduced during the municipal court trial such as to establish any purpose to harass on the part of the defendant. The Appellate Division observed that although defendant was discovered by a window late in the evening, there was no evidence to show that he had made any efforts to bother either the victim or any other residents at the complex. See Fuchs, supra at 426, 553 A.2d 853.
*723 Perhaps it is possible that defendant's actions might have made him aware that Ciarlo would be annoyed by his conduct. Indeed, any activities on the part of the defendant directed towards the collection of the judgment would seem to have annoyed complainant. However, the record fails to support a conclusion that defendant's conduct demonstrated a conscious objective to annoy or alarm complainant. Defendant neither spoke to Ciarlo nor verbally or physically accosted her. The "contact" between them consisted of seven brief stops near Ciarlo's residence, which occurred over a period of three months, the stated purpose of which was to ascertain ownership of motor vehicles.
Although the Municipal Court admitted hearsay testimony relating to several alleged telephone calls made by defendant to Ciarlo's former employer, this testimony was incompetent and cannot serve as a basis to support his conviction. The admission of such testimony and its use by the Municipal Court as a foundation for the conviction violated defendant's Sixth Amendment right to confront witnesses against him. See State v. Bankston, 63 N.J. 263, 269, 307 A.2d 65 (1973). See also State v. Halleran, 181 N.J. Super. 542, 438 A.2d 577 (App.Div. 1981) as to the quality of proofs required in cases involving harassing telephone calls.
The only other evidence of purposeful conduct on the part of the defendant towards complainant was defendant's placement of a single telephone call to Ciarlo's current landlord inquiring as to ownership of vehicles at her home. Standing alone or in conjunction with the other actions of the defendant, this cannot as a matter of law, support a conviction for harassment. See E.K. v. G.K., 241 N.J. Super. 567, 570, 575 A.2d 883 (App.Div. 1990).
The only reported decision in this State dealing with harassment in connection with debt collection practices is State v. Finance American Corp., 182 N.J. Super. 33, 440 A.2d 28 (App. Div. 1981). This case clearly is distinguishable from the instant case. In Finance American, the defendant was accused of making a series of anonymous or inconvenient calls to the complainant. *724 Defendant's agent was found to have persisted in placing calls to the judgment-debtor at her job even after she had informed him that she was not permitted to accept personal calls. Furthermore, defendant's employees directed racial slurs at the victim and threatened her with criminal administrative sanctions. See State v. Finance American Corp., supra, at 36, 440 A.2d 28. Although, in the instant case, this court is addressing a different section of the harassment statute, the Finance American case does provide insight as to the level of misconduct which must be perpetrated before an individual may be adjudicated guilty of harassment.
Based upon a review of the competent evidence in this matter, it appears that the only direct contact or communication with the complainant by defendant was his service of the Order for Discovery. While the expression "trick or treat" is most frequently associated with Halloween, it cannot be seriously suggested that the use of that expression in April, while simultaneously handing an individual lawful process, constitutes an act of harassment.
The defendant's conduct must be viewed within the context of this case. Defendant was owed a substantial amount of money by Ciarlo for back rent and, apparently, physical damage to defendant's property. Defendant justifiably resorted to legal process by employing the services of an attorney for that purpose. Complainant declined to respond until such time as a warrant for her arrest was issued. Perhaps the complainant perceived defendant would tire of the pursuit of her tangible assets and write off this debt as uncollectible. Defendant, however, viewed the matter otherwise. It may well be that Ciarlo's annoyance was attributable to the fact that her efforts at avoiding the consequences of the civil judgment had failed to deter the defendant. The methods employed by defendant in his efforts to discover tangible assets were essentially unobtrusive. To the extent that complainant was annoyed or fearful, in the context of this case, such response was not reasonable.
In convicting the defendant of harassment, the Municipal Court made reference to unlawful debt collection practices and *725 "dunning". Although the Municipal Court did not expressly reference any statute or regulation, it inferentially referred to "collection law" and "consumer law". Presumably the court was referring to the Fair Debt Collection Practices Act (F.D.C.P.A.), 15 U.S.C. § 1692 et seq. To the extent that the Municipal Court relied upon the F.D.C.P.A. as a basis for this conviction, such reliance was misplaced.
As defined by 15 U.S.C. § 1692a(6), "(t)he term `debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." (emphasis added) Since the defendant's principal business was not debt collection the F.D.C.P.A. is inapplicable to defendant. See also Kizer v. Finance America Credit Corp., 454 F. Supp. 937, 939 (N.D.Miss. 1978).
Even assuming that the defendant was covered by the F.D.C.P.A., his conduct would not even fit the definition of harassment under the Act. The statute prohibits a debt collector from engaging in "... any conduct the natural consequences of which is to harass, oppress or abuse any person in connection with the collection of a debt." See 15 U.S.C. § 1692d. "The purpose of the [F.D.C.P.A. is] to protect consumers from unfair, deceptive and harassing collection practices, while leaving collectors free to employ efficient, reasonable and ethical practices in pursuit of their profession." See Graziano v. Harrison, 763 F. Supp. 1269, 1275 (D.N.J. 1991).
The F.D.C.P.A. only prohibits "oppressive and outrageous conduct." See Bieber v. Associated Collection Services, Inc., 631 F. Supp. 1410, 1417 (D.Kan. 1986). As the District Court aptly noted, "[s]ome inconvenience or embarrassment to the debtor is the natural consequence of debt collection." Bieber, supra, at 1417. As stated by the United States District Court for the District of Delaware:
*726 "When it passed the F.D.C.P.A., Congress had in mind such abusive practices as: obscene or profane language, threats or violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, or neighbors, or an employer, obtaining information about a consumer through false pretenses, impersonating public officials and attorneys, and simulating legal process." See Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 394 (D.Del. 1991).
In the instant matter, defendant's stated purpose was not to harass but to collect a debt reduced to judgment. His efforts towards this end were as follows: He personally served legal process on the complainant, sat outside complainant's residence on seven occasions, copied down her license plate number, telephoned her landlord on one occasion and on another, "glared" at complainant's boyfriend upon his arrival at home. Accepting all of the foregoing as factual, this conduct might be deemed inconvenient but, as a matter of law, does not constitute civil harassment under the F.D.C.P.A. While the defendant was certainly persistent and perhaps overly aggressive in the pursuit of the satisfaction of his judgment, his conduct fell short of criminality.
The proceedings before the Municipal Court were commenced by citizens' complaints. See Rule 7:3-1. Although the complaints were filed by civilians and not police officers, the matters were prosecuted for and on behalf of the State. See State v. Winne, 12 N.J. 152, 165, 96 A.2d 63 (1953). However, the municipal prosecutor did not represent the State in these proceedings. The Ciarlo complaint was prosecuted by the municipal public defender and the defendant argued his case pro se. See R. 7:4-4(b).
Although there are practical reasons for the existence of R. 7:4-4(b), the practice is not without its attendant risks. "Individuals can and do utilize such criminal proceedings to bolster a related civil proceeding or merely for vindictive or harassing purposes." See State of New Jersey v. Imperiale, 773 F. Supp. 747, 748 (D.N.J. 1991). See also State of New Jersey v. Kinder, 701 *727 F. Supp. 486, 489 (D.N.J. 1988) for a discussion as to the constitutionality of R. 7:4-4(b) and its implications upon a defendant's Sixth and Fourteenth Amendment rights. See also State v. Harris, 262 N.J. Super. 294, 620 A.2d 1083 (Law Div. 1992).
Thus, just as defendant should not have been permitted to invoke the criminal or quasi-criminal jurisdiction of the Municipal Court, utilizing it as a sword to assist his post judgment collection efforts, neither should that jurisdiction be invoked to shield the complainant Ciarlo from the lawful consequences of the civil judgment. The law affords other means and forums for that purpose. See 11 U.S.C. § 701, et seq., and 11 U.S.C. § 1301 et seq.
This is not to suggest that the law will countenance any conduct on the part of a judgment creditor in an effort to collect a civil judgment. Each case is fact-sensitive. In this case, the defendant did not transgress the line between acceptable and unacceptable collection practices; he did not go "too far."
Accordingly, for the reasons set forth herein, the judgment of conviction entered by the Hawthorne Municipal Court against the defendant John E. Long is reversed.