# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2149-15T4

L.S.,

    Plaintiff-Respondent,

v.

J.P.,

    Defendant-Appellant.

_____

Submitted May 8, 2017 — Decided May 19, 2017

Before Judges Sabatino and Haas.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Bergen County,
Docket No. FV-02-002275-13.

J.P., appellant pro se.

L.S., respondent pro se.

PER CURIAM

This matter returns to us following remand proceedings directed by our previous opinion.  <u>L.S. v. J.P.</u> No. A-1035-13 (App. Div. Apr. 30, 2015).  Defendant J.P. appeals from a final restraining order ("FRO") entered in favor of plaintiff L.S.

pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. We affirm.

We begin by referencing the essential background facts as set forth in our earlier opinion:

> Plaintiff and defendant were both married to other people when they had a love affair that lasted approximately one year. During that time, they exchanged over 31,000 text messages. The relationship was up and down and filled with arguments and reconciliations. Over time, their respective spouses, as well as plaintiff's son became aware of the affair. Plaintiff contends that at some point in early May 2013, she made it clear that she wanted to end all communication with defendant. She also contends that despite her wishes, defendant kept trying to communicate with her and harassing her. Defendant, on the other hand, argues that until plaintiff filed charges against him on May 29, 2013, they had an ongoing, although tumultuous, relationship. He maintains that they had sex together as late as May 20, 2013.
>
> [Id. at 1-2.]

In the trial judge's initial decision, the judge determined that defendant's conduct constituted harassment under both N.J.S.A. 2C:33-4(a) and (c). Id. at 3. As we noted in our prior opinion:

> [T]he judge found that from May 22 to May 29, 2013, when plaintiff went to the police, the communications from plaintiff made it clear that she wanted defendant to leave her alone. The judge continued that defendant should "have understood that his communications were not welcomed." Thus, the judge found

> defendant crossed the line from being a disappointed suitor, and that he was guilty of harassment. The judge then entered an FRO against defendant.
>
> [*Id.* at 2-3.]

Defendant appealed. We remanded to enable the trial judge to amplify the initial decision with credibility findings, together with more specific findings concerning defendant's alleged intent to harass plaintiff, and the necessity of restraints under the second prong of Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). L.S., *supra*, slip op. at 5.

On remand, the trial judge conscientiously reviewed the evidence developed at the six-day trial, and rendered a comprehensive nineteen-page written decision that included well-supported findings of fact and conclusions of law. In describing defendant's conduct, the judge stated:

> The pattern of defendant's actions from May 11, 2013, [until the issuance of the temporary restraining order ("TRO") on May 29, 2013,] was an escalating, alarming course of increasingly intense and controlling behavior. [Defendant] was demanding to know where plaintiff was, stalking the locations where he expected her to be, going to her home in the middle of the night and then accusing her of not being there, accusing her of lying to him about where she was and vocally expressing his disbelief. . . . The intensity of his feelings was displayed in part by the ceaseless, repetitive text messages, with the ration being grossly disproportionate in terms

of the number of texts he would send in comparison to those sent by plaintiff.

Thus, the judge again determined that defendant harassed plaintiff under N.J.S.A. 2C:33-4(a) and (c) and that an FRO was needed to protect plaintiff from further acts of domestic violence.

In so ruling, the trial judge, as we had requested, made detailed credibility findings. The judge found that

> [p]laintiff's testimony was direct, and it was solidly substantiated by the documentary and audio records of text and voice communications. She was responsive to the questions asked by all counsel and by the court. She was not melodramatic or overly emotional, but displayed distress and discomfort consistent with her descriptions of her feelings and reactions to defendant's actions.

On the other hand, the judge determined that defendant's testimony was simply not credible. The judge stated:

> Defendant's presentation at trial was not so favorable. He never made eye contact, either when seated at counsel table or on the witness stand. The intensity of defendant's emotions was apparent in both the evidence presented as well as in his demeanor and behavior throughout the trial. Defendant was bursting to speak, clearly had a script and agenda, had to be reminded to answer what his own lawyer was asking rather than make his speech, and had to be told the case was not a platform for him to make a speech or apology to non-party witnesses in the courtroom[.]

The trial judge next addressed the issue of whether defendant acted with the intent to harass plaintiff. On this subject, the

4

judge again made specific and well-supported findings.  The judge

stated:

> Common sense and experience tell this court that the sheer number of texts, the relentless calling and texting, over and over and over again, bespeak an intent to harass, as well as to alarm or seriously annoy plaintiff.  Defendant saw everything slipping away - his teaching job, his wrestling coaching, his passionate love affair, and his way of life.  He was angry, hurt, and jealous.  The [denigrating] statements [defendant made] cannot have had a purpose other than to harass.  Communications that he knew where she was and who she was with, that he was ringing her doorbell in the middle of the night, that he knew where her car was, were clearly calculated to cause her alarm.  [Defendant's] suggestion that he was motivated by a desire to make sure [plaintiff] was safe, and to express his concern, defies credulity.  These were among the reasons this court found defendant committed acts of harassment toward plaintiff.

Finally, the trial judge found that plaintiff met the second

prong of the Silver test by demonstrating that a FRO was needed

to protect her from continued acts of domestic violence.  The

judge explained this ruling as follows:

> With respect to plaintiff, herself, she had steadily, firmly, and consistently asked defendant to stop contact, from May 21, 2015, onward.  Defendant was unable to control himself or to accept those limits until the TRO was issued.  His inability to control himself when it came to plaintiff convinced this court that without the FRO and its panoply of sanctions, he would renew his contact.

This appeal followed.

On appeal from the remand ruling, defendant contends that plaintiff failed to prove by a preponderance of the evidence that he committed any acts of harassment against plaintiff. Defendant also alleges that the trial judge erred in finding that a FRO was necessary to protect plaintiff from an immediate danger or to prevent further abuse. We disagree with these contentions.

Our review of a trial judge's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A judge's fact-finding is "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413.

"Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). This is so because the judge has the opportunity to see and hear the witnesses as they testify, thereby developing a "'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. G.M., 198

N.J. 382, 396 (2009) (quoting <u>D.Y.F.S. v. E.P.</u>, 196 <u>N.J.</u> 88, 104 (2008)). A judge's purely legal decisions, however, are subject to our plenary review. <u>Crespo v. Crespo</u>, 395 <u>N.J. Super.</u> 190, 194 (App. Div. 2007) (citing <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 <u>N.J.</u> 366, 378 (1995)).

In adjudicating a domestic violence case, the trial judge has a "two-fold" task. <u>Silver</u>, <u>supra</u>, 387 <u>N.J. Super.</u> at 125. The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in <u>N.J.S.A.</u> 2C:25-19(a), which incorporates assault, <u>N.J.S.A.</u> 2C:12-1, and harassment, <u>N.J.S.A.</u> 2C:33-4, as conduct constituting domestic violence. <u>Id.</u> at 125-26. The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." <u>Kanaszka v. Kunen</u>, 313 <u>N.J. Super.</u> 600, 607 (App. Div. 1998); <u>N.J.S.A.</u> 2C:25-29(a)(1).

If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the facts set forth in <u>N.J.S.A.</u> 2C:29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." <u>J.D. v. M.D.F.</u>, 207 <u>N.J.</u> 458, 475-76 (2011) (quoting

7 <span style="float:right">A-2149-15T4</span>

Silver, supra, 387 N.J. Super. at 126-27). Whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment[,] and physical abuse," and on "whether immediate danger to the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. l995) (citing N.J.S.A. 2C:25-29(a)); see also Cesare, supra, 154 N.J. at 402.

Applying these standards to the arguments raised by defendant, we discern no basis for disturbing the trial judge's decision to grant a FRO to plaintiff. The judge specifically found that plaintiff's account of defendant's conduct leading up to her application was credible. There is substantial credible evidence in the record to support the judge's findings that defendant acted with the intent to harass plaintiff and that a FRO was necessary to protect plaintiff. Therefore, we affirm substantially for the reasons set forth in the judge's comprehensive written opinion. We add the following brief comments.

N.J.S.A. 2C:33-4 defines harassment, in relevant part, as follows:

> [A] person commits a petty disorderly persons offense if, with purpose to harass another, he:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; [or]
>
> . . . .
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

Proof of a purpose to harass is an essential element of N.J.S.A. 2C:33-4. See L.D. v. W.D., 327 N.J. Super. 1, 5 (App. Div. 1999). "A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result." State v. Hoffman, 149 N.J. 564, 577 (1997) (quoting N.J.S.A. 2C:2-2(b)(1)). There must be proof that a defendant's conscious object was to "harass," that is, "annoy," "torment," "wear out," or "exhaust." State v. Castagna, 387 N.J. Super. 598, 607 (App. Div.) (quoting Webster's II New College Dictionary 504 (1995)), certif. denied, 188 N.J. 577 (2006). Merely knowing that someone would be annoyed, as opposed to having a conscious objective to annoy, is insufficient to prove a purpose to harass. See State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div. 1989).

"A finding of a purpose to harass may be inferred from the evidence presented[,]" and "[c]ommon sense and experience may inform that determination." Hoffman, supra, 149 N.J. at 577. Because direct proof of intent is often absent, "purpose may and often must be inferred from what is said and done and the surrounding circumstances," and "[p]rior conduct and statements may be relevant to and support an inference of purpose." Castagna, supra, 387 N.J. Super. at 606; see also State v. Avena, 281 N.J. Super. 327, 340 (App. Div. 1995) ("While [the appellate court] might or might not have made the same inferences, [its] role is one of determining whether the trial judge's inferences were rationally based on evidence in the record.").

We agree the trial judge had sufficient grounds to conclude that defendant's conduct included scores of communications made "at extremely inconvenient hours" and in a "manner likely to cause annoyance or alarm" under N.J.S.A. 2C:33-4(a). As fully detailed in the judge's decision, the record shows that defendant also clearly engaged in a "course of alarming conduct" and "repeatedly committed acts" with the purpose to "alarm or seriously annoy" plaintiff. N.J.S.A. 2C:33-4(c). The record also fully supports the judge's conclusion that a FRO was needed to protect plaintiff. As the judge explained, the sheer number and relentless nature of defendant's text messages, even after plaintiff repeatedly told

10

him to stop contacting her,[1] amply demonstrate that a FRO was needed to prevent defendant from continuing to harass plaintiff.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] In her appellate brief, plaintiff asserts that even after the issuance of the FRO, defendant has continued to drive by her home. However, because these allegations were not part of the record developed before the trial court, they are not properly before us and, therefore, we have not considered them.

A-2149-15T4