# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1669-23

Y.G.C.,[1]

    Plaintiff-Respondent,

v.

E.P.R.,

    Defendant-Appellant.

_____

Submitted December 18, 2024 – Decided March 10, 2025

Before Judges Mayer and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-1308-24.

The Tormey Law Firm, attorneys for appellant (Louis J. Keleher, on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to preserve the confidentiality of domestic violence records, R. 1:38-3(d)(9), and protect the confidentiality of the victim, R. 1:38-3(d)(10).

Defendant E.P.R. appeals from a January 31, 2024 amended final restraining order (FRO) issued in favor of plaintiff Y.G.C. under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Seeking dismissal of the FRO, defendant challenges the trial judge's findings on both Silver[2] prongs. Defendant also claims his right to due process was violated because the judge denied his mid-trial requests for an adjournment to retain counsel. Unpersuaded, we affirm.

I.

We commence our review with the allegations that gave rise to the temporary restraining order (TRO) and procedural history to lend context to the issues raised on appeal. The parties began living together in June 2021, shortly after plaintiff learned she was pregnant with their child. They resided together until July 8, 2023, when defendant moved out. Plaintiff and the parties' daughter, then about eighteen months old,[3] remained in the apartment. Defendant paid the rent; the lease agreement was in his name only.

---

[2] Silver v. Silver, 387 N.J. Super. 112, 125-26 (App. Div. 2006).

[3] At the time of the FRO return date on December 12, 2023, plaintiff stated the child was one year and nine months old; at the time of her January 29, 2024 trial testimony, plaintiff stated the child was one year and eleven months old.

A-1669-23

On November 3, 2023, defendant returned to the apartment wearing a body camera. Defendant informed plaintiff he canceled the lease and produced a letter from the management company stating the premises must be vacated by November 30, 2023. Over the next two weeks, defendant returned to the apartment several times, removed his remaining personal belongings, and advised plaintiff she and the baby needed to find a place to live "[b]ecause he was not going to pay the rent." Plaintiff obtained permission from the management company to remain in the apartment until December 4, 2023.

In the meantime, on December 2, 2023, defendant returned to the apartment with a moving truck, removed plaintiff's and the child's personal belongings without plaintiff's permission, and loaded the items onto his truck. That same day, plaintiff reported the incident to the local police and obtained a TRO. In her domestic violence complaint, plaintiff alleged the predicate act of harassment. The complaint also indicated a prior Bergen County domestic violence matter between the parties had been dismissed. Within a week, plaintiff and the child vacated the apartment and moved to New York.

On December 12, 2023, the trial judge held a virtual hearing on plaintiff's request for an FRO. Because both parties were self-represented, the judge issued

"warnings and procedures," which spanned five transcript pages. As to the parties' right to representation, the judge advised:

> Both plaintiff and defendant have the right to retain their own attorney for the [FRO] hearing. No attorneys will be appointed for you by this court. If you do not yet have an attorney but would like an opportunity to consult with one, this is the first time the case is listed, you may request an adjournment or postpone your case from today's date.

The judge asked if the parties intended to seek counsel. Plaintiff replied, "I'm going to look for one." Defendant replied, "Your honor, it's very clear here. I'm going to represent myself." The judge postponed the trial to January 9, 2024.

On December 19, 2023, plaintiff obtained an amended TRO. Plaintiff asserted when she returned home from the police department on December 2, 2023, defendant broke the locks to the residence and emptied the apartment of her and the baby's personal belongings. Plaintiff alleged "ongoing harassment."

Trial was held on two days in late January 2024. Represented by counsel, plaintiff testified on her own behalf, called one witness, and introduced into evidence four photographs. Defendant was self-represented. He testified on his own behalf and presented the testimony of one witness. Defendant's attempts to introduce into evidence certain documents were unsuccessful because they were

4

not translated from Spanish into English.  Not surprisingly, the testimony of the parties was diametrically opposed.

On the first trial day, plaintiff testified at length about the incidents that prompted her to seek an FRO against defendant.  At the time of trial, defendant still possessed plaintiff's work licenses, Medicaid documents, divorce certificate, jewelry, money, clothing, shoes, and coats, and the child's clothing and toys.  Defendant also retained two bags belonging to plaintiff:  one bag contained $15,000 plaintiff "gathered together" to pay rent and deposits; the other bag held plaintiff's computer and $25,000 from her aunt for "safekeeping."  Because defendant failed to return these items, plaintiff purchased new clothes for the child.  As a result, plaintiff's "credit card [wa]s maxed out" and she owed more than $6,000 in credit card debt.

Plaintiff also testified about defendant's prior verbal and emotional abuse, including calling her "foul" and "[h]umiliating" names, such as, "whore," "bitch," "witch," and "sick person."  She claimed defendant "was very jealous. He asked [her] a lot of questions.  He would follow [her] to [her] job.  On Facetime he would always ask [her] where [she] was, and if [she] didn't answer him, he would get angry."

A-1669-23

Plaintiff explained the parties shared a cell phone plan. Defendant canceled her line on December 4, 2023 as he had done on many prior occasions because defendant "didn't like" when plaintiff "talk[ed] to [her] family and friends." Plaintiff testified she feared defendant and sought an FRO "[b]ecause . . . if he didn't care about leaving [her and the child] on the street, kicking [them] out of the house with no place to go, and leaving [them] with nothing, . . . what else could he do?" Plaintiff testified: "I fear for my safety." At the conclusion of direct examination, the judge recessed for the day.

At the outset of the second trial day, the judge noted he had received defendant's written request for an adjournment to retain counsel. Defendant explained, "I do have a lawyer and I want to introduce him . . . [but h]e has another case now" so "he said that if I can request an adjournment." Noting trial had begun and the attorney did not file a notice of appearance, along with the age of the case, the judge denied the request.

Shortly after commencing cross-examination of plaintiff, when the judge denied defendant's application to admit documentary evidence written in Spanish, defendant requested an adjournment "to get an attorney." Noting the trial was "halfway through," the judge addressed defendant:

When I first had this matter heard, and it is over goal, I asked you, "are you ready to proceed?" At that time, you said, "yes."

We proceeded with trial. If you had an attorney here now, I would allow him to participate. You don't have a lawyer. You don't have a lawyer presenting his representation or letter of representation in this matter. As far as I'm concerned you don't have a lawyer because he has not notified this court as to his participation in this matter.

Defendant claimed his attorney spoke with the judge's secretary the previous day and "came to see if he can represent [defendant] and they said that [defendant] ha[d] to get an adjournment from [the judge] personally." The judge confirmed with his court clerk that a notice of appearance was not filed on defendant's behalf.

Defendant then claimed he felt physically ill and could not proceed. In denying defendant's newly asserted request to adjourn the trial, the trial judge stated: "When you got here you said you wanted an adjournment to get a lawyer. There's no lawyer. Then after that got denied two or three times, now you raise a medical issue with no proof of medical issue and general anxiety. I'm denying that request as well."

Following a lengthy colloquy, defendant provided the name of his purported attorney. The judge's secretary called the attorney who denied he

represented defendant. After another considerable exchange with defendant on the record, the judge denied the motion and defendant's cross-examination of plaintiff continued.

At the close of plaintiff's evidence, defendant testified about the incidents leading to the TRO. He denied stealing plaintiff's personal belongings, claiming instead she "put all her stuff" in his trailer until she found an apartment. On cross-examination, defendant acknowledged plaintiff's belongings were still stored in his sister's garage. In his closing statement, defendant claimed plaintiff was "not afraid of [him]." He said plaintiff was angry because her prior TRO against defendant had been dismissed. He only wanted what was "best for [his] daughter."

Following closing arguments, the trial judge rendered a cogent oral decision, granting plaintiff's application. The judge cited the governing legal principles and recognized this case turned on the credibility of the parties. The judge also amplified his reasons for denying defendant's late application to retain counsel. The judge found defendant's lack of candor about his retention of counsel and his mid-trial illness negatively impacted his trial testimony. Referencing defendant's demeanor, the judge found he "lacked candor" and his

8

answers were "evasive." The judge also cited defendant's inconsistent statements.

Conversely, the trial judge found plaintiff's testimony "far more reasonable and credible with regard to the acrimonious relationship and the taking of her property." The judge elaborated:

> This court finds, based on the credible testimony of . . . plaintiff, that his taking [her] items and the child's items and constantly berating her with regard to leaving the apartment because he could not afford to make that payment, not credible, and ultimately made the payment and still forcibly removed her and her items. He still has those items, and although he says he's willing to give them back, she still does not have those and, in fact, her credit card debt exploded as to piece together the items that she needs.
>
> She testified that she was left without food, clothing, and personal documents and belongings. This court finds that the defendant was angry, having to pay at least one extra month or, as he said, she knew about this for six months and remained there. His actions, I find, to be with the intent to harass and bother . . . plaintiff in this matter.

The judge thus found plaintiff satisfied the predicate act of harassment under the first Silver prong.

Turning to the second Silver prong, the judge found plaintiff demonstrated restraints were necessary. Referencing the "new law"[4] requiring the court "consider a pattern of coercive control against the victim," the judge recounted defendant "deprived [plaintiff] of those basic necessities, including clothing, computer, money, food, and other items." The judge described defendant's actions as "the very definition of coercive financial control." The judge found an FRO was necessary as "defendant was trying to control [plaintiff] by depriving her of basic necessities, as well as that of the child."[5]

## II.

Our limited scope of review of a trial court's findings in a domestic violence matter is well established. See Cesare v. Cesare, 154 N.J. 394, 411 (1998); C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "[W]e grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). We will not disturb the court's factual findings and legal conclusions "unless [we are] convinced that they are so manifestly unsupported by or

---

[4] See N.J.S.A. 2C: 25-29(a)(7).

[5] Shortly after the PDA was issued, we denied defendant's emergent application to stay the PDVA's fingerprinting requirement.

inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

Deference is particularly appropriate in this case, where the evidence is largely testimonial and hinges on the trial court's ability to make credibility assessments. Ibid. It is axiomatic that the judge who observes the witnesses and hears their testimony has a perspective the reviewing court simply does not enjoy. See Pascale v. Pascale, 113 N.J. 20, 33 (1988). Accordingly, "[w]e accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C., 463 N.J. Super. at 428 (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)); see also Cesare, 154 N.J. at 413. Conversely, a trial judge's decision on a purely legal issue is subject to de novo review on appeal. Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007).

The entry of an FRO under the PDVA requires the trial court make certain findings, pursuant to the two-step analysis set forth in Silver. Under the first Silver prong the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts

set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). The trial court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402).

Harassment, as defined by N.J.S.A. 2C:33-4, is a predicate act of domestic violence pursuant to N.J.S.A. 2C:25-19(a)(13), and occurs when, with the purpose to harass another, a person:

> (a) [m]akes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> (b) [s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> (c) [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4(a) to (c).]

A finding of harassment requires defendant's "conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D., 207 N.J. at 487 (citing State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div. 1989)). A judge may use "[c]ommon sense and experience" in determining whether a defendant's conduct constitutes harassment when

12

"examined in light of the totality of the circumstances." State v. Hoffman, 149 N.J. 564, 577, 585 (1997).

If the plaintiff satisfies the first Silver prong, the court must then determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)(1) to (7)], to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127; see also J.D., 207 N.J. at 475-76 (noting the importance of the second Silver prong). Under the second Silver prong, "the conduct must [be] imbued by a desire to abuse or control the victim." R.G. v. R.G., 449 N.J. Super. 208, 228 (App. Div. 2017) (citing Silver, 387 N.J. Super. at 126-27).

The court's determination under the second Silver prong requires evaluation of:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety;

(6) The existence of a verifiable order of protection from another jurisdiction; and

(7) Any pattern of coercive control against a person that in purpose or effect unreasonably interferes with, threatens, or exploits a person's liberty, freedom, bodily integrity, or human rights with the court specifically considering evidence of the need for protection from immediate danger or the prevention of further abuse . . . .

[N.J.S.A. 2C:25-29(a)(1) to (7).]

The statute further defines "coercive control" to include:

(a) isolating the person from friends, relatives, transportation, medical care, or other source of support;

(b) depriving the person of basic necessities;

(c) monitoring the person's movements, communications, daily behavior, finances, economic resources, or access to services;

      . . . .

(g) threatening to deny or interfere with an individual's custody or parenting time, other than through enforcement of a valid custody arrangement or court order . . . ; or

(h) any other factors or circumstances that the court deems relevant or material.

[N.J.S.A. 2C:25-29(a)(7).]

14

A.

Maintaining plaintiff failed to meet her burden under the PDVA, defendant first challenges the trial judge's credibility and factual findings. He argues "the [p]arties were simply having a domestic contretemps regarding [his] inability to pay the monthly rent, and . . . [p]laintiff's inability to remove her own things from the apartment."

We acknowledge trial courts must exercise care when deciding whether acts "constitute harassment for purposes of issuing a domestic violence restraining order" or whether those acts "fall instead into the category of 'ordinary domestic contretemps.'" J.D., 207 N.J. at 475 (quoting Corrente v. Corrente, 281 N.J. Super. 243, 250 (App. Div. 1995)). However, the history and pattern of coercion cited by the trial judge, along with his specific findings regarding defendant's course of conduct "through the end of November and early December" 2023, supported the finding that defendant harassed plaintiff under N.J.S.A. 2C:33-4(c). In his decision, the judge properly considered the totality of the circumstances based on the credible evidence presented at trial. Moreover, the judge provided compelling reasons in support of finding defendant acted with intent to harass plaintiff.

A-1669-23

Further, the trial judge's analysis also included a thorough review of the requisite statutory factors supporting the need for an FRO, including a fulsome analysis of the applicable factors under N.J.S.A. 2C:25-29(a)(7). We disagree with defendant that an FRO only can issue to prevent "immediate danger." As we have noted, immediate danger is one of the enumerated factors for consideration, see N.J.S.A. 2C:25-29(a)(2), but is not a categorical prerequisite to issuance of an FRO. Rather, "the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)] to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127; see also N.J.S.A. 2C:25-29(b) (stating "[i]n proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse"). Under the totality of circumstances presented, the issuance of the FRO was appropriate for plaintiff's protection.

## B.

Nor are we persuaded, on this record, the trial judge abused his discretion by denying defendant's requests for an adjournment to obtain counsel. See e.g., Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 575 (2003) (recognizing a "request for an adjournment of the trial is addressed to the trial judge's

16

discretion"); <u>Smith v. Smith</u>, 17 N.J. Super. 128, 131-32 (App. Div. 1951) (stating we review a court's denial of an adjournment request under the abuse of discretion standard).

In a domestic violence matter, due process "include[s] the opportunity to seek legal representation, if requested." <u>D.N.</u>, 429 N.J. Super. at 606. "The right to seek counsel is an important due process right that affords defendants 'a meaningful opportunity to defend against a complaint in domestic violence matters[.]'" <u>A.A.R. v. J.R.C.</u>, 471 N.J. Super. 584, 588 (App. Div. 2022) (alteration in original) (quoting <u>D.N.</u>, 429 N.J. Super. at 606). Due process in domestic violence matters requires "a defendant understands that he or she has a right to retain legal counsel and receives a reasonable opportunity to retain an attorney." <u>Ibid.</u> Indeed, we have vacated entry of an FRO when we concluded the defendant did not clearly and knowingly waive his right to counsel because the judge failed to "inform defendant of his right to retain counsel, or of the serious consequences that could ensue if an FRO was entered against him prior to trial." <u>Ibid.</u>

In the present matter, the trial judge provided defendant clear warnings and ample opportunities for the parties to obtain counsel. The judge commenced the December 12, 2023 hearing by informing both parties of "the right to retain

17

their own attorney for the final restraining order hearing," and the opportunity to consult with counsel. Although plaintiff requested time to seek counsel, defendant clearly stated he planned to represent himself. As we stated in <u>D.N.</u>, where the defendant similarly "denied the need to [seek counsel], believing hers was the stronger case," the fact that the defendant's "confidence was ill-founded is not a basis to conclude the court erred." 429 N.J. Super at 607. Similar to the defendant in <u>D.N.</u>, defendant in this case "understood [his] right to employ counsel, which [he] clearly and intentionally relinquished." <u>Ibid.</u> We discern no abuse of discretion here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1669-23